GEORGE E. CHAMPLIN *vs.* PAWCATUCK VALLEY STREET
RAILWAY COMPANY.

MARCH 15, 1912.

PRESENT: Dubois, C. J., Johnson, and Sweetland, JJ.

*(1) Negligence. Street Railways.*

Plaintiff was driving a cart loaded with gravel, and met an automobile on the part of the road between the track and the sidewalk. The automobile turned to the right and ran upon the sidewalk, but could not continue until it had passed the cart because of a pole in the sidewalk, and stopped five or six feet from the pole. Plaintiff drove to the right so far that his off wheels rubbed against the rail and his nigh wheels just cleared the automobile. While in this position, unable to turn from the track because of the automobile, defendant's car approached from behind, and the running board struck his forward wheel, throwing plaintiff off and injuring him.

*Held,* a verdict for plaintiff on the above facts would be sustained.

*(2) Evidence.*

Evidence is properly admissible for the purpose of explaining a statement which otherwise would be unintelligible.

*(3) Evidence. Striking Out Answer.*

Where a question is admissible, if the objection is to the answer, it must be taken advantage of by motion to strike out such answer and not under an exception to the question.

*(4) Evidence. Res Gestae.*

Evidence that the motorman some six minutes after the accident, when the car was at a standstill and plaintiff had just been picked up, in reply to a statement by a by-stander "the railroad company is to blame for this" said "there has no one denied it, has there" is admissible as part of the res gestae.

*(5) Evidence. Opinion.*

An answer to a question as to whether there was room for two teams to meet and pass "No, not without going on the sidewalk,"

*Held,* properly admitted since without knowing the exact measurement, witness could answer as he did, if he had knowledge of the fact as to the possibility of two teams passing each other at the place in question.

*(6) Evidence. Res Gestae.*

Evidence that the motorman some three or four minutes after an accident stated that he thought he could pass without hitting plaintiff is admissible as part of the res gestae.

*(7) Evidence. Depositions. Exceptions.*

Objection to a question asked of a witness upon taking depositions must be made before the magistrate, and not upon the reading of the deposition at the trial.

*(8) Evidence. Opinion.*

Question to a witness whether there was room at a stated place where plaintiff met an automobile for an automobile and a team to pass in the travelled part of the road, was properly admitted.

*(9) Evidence. Res Gestae.*

Evidence that the motorman after an accident stated that he was sure he was going to miss him (plaintiff) that was why he did not stop, was properly admitted as part of the res gestae.

*(10) Evidence. Damages.*

In an action against a railway company for negligence arising out of a collision, evidence of plaintiff as to his wages and the work performed in his regular occupation, was admissible where the declaration alleged that he was incapacitated from working and earning the wages which but for the injuries he would have earned.

*(11) Evidence.*

In an action against a railway company arising out of a collision question to witness whether there was anything he could have done to have gotten out of the way faster than he did, was properly admitted.

*(12) Negligence.*

In an action against a railway company arising out of a collision charge of the court that if the motorman saw the plaintiff cramped in a narrow place in the highway and forced near the track, and that by continuing with the motion of his car he would be likely to strike the wagon of plaintiff, he had no

right to go in and speculate upon the chances of possibly getting through, was proper.

*(13) Negligence. Last Clear Chance.*

Charge of the court that if plaintiff was guilty of negligence in driving too close to the track, still if thereafter he did all he reasonably could to avert the accident, it was the duty of the motorman if he saw and appreciated the danger in which plaintiff was placed in time to avert the accident, to do so and neglect on his part so to do became the proximate cause of the injury, was proper.

*(14) Damages.*

In an action for negligence, evidence was submitted as to the labor of plaintiff and the wages he received as a teamster and as to his labor in his stable, but no evidence as to his profits or loss of profits in his business of teaming or of a stable keeper.

*Held,* the charge of the court that if the jury found the plaintiff had lost anything from being unable to perform his usual vocation, "which is that of a stable keeper as he told you, and also as a teamer" it would constitute an element of damage, was given on the evidence and could not apply to or cause the jury to consider possible losses in the teaming or stable business.

*(15) New Trial. Remarks of Counsel.*

An exception to the denial by the trial court of a motion for new trial based on improper argument of counsel, will not be sustained, where immediately thereafter the court properly instructed the jury to disregard the remark, and no exception was taken to such instruction.

*(16) New Trial. Newly Discovered Evidence.*

A party is not entitled to a new trial for newly discovered evidence, where there was opportunity to have discovered the evidence before the trial and its effect in reduction of damages would be slight.

*(17) Damages.*

In an action for negligence, a verdict of $15,000 *held* not excessive where the injuries were permanent incapacitating plaintiff for labor during life.

TRESPASS ON THE CASE for negligence. Heard on exceptions of defendant, and overruled.

JOHNSON, J. This is an action of the case brought by George E. Champlin, of Westerly, in Washington county, against the Pawcatuck Valley Street Railway Company, a corporation doing business in said Washington county, to recover damages for personal injuries alleged to have been sustained by said plaintiff through the negligence of the defendant company in the operation of one of its street cars.

(1)    On the 13th day of July, 1910, the plaintiff was driving a
pair of horses attached to a cart carrying a load of gravel
weighing from 5,000 to 5,500 pounds along a highway in the
town of Westerly, known as the Westerly Road, between
Ninigret Avenue and Wauwinnet Avenue.  At a place in
said highway on the part of the road between the railroad
track and the sidewalk he met an automobile.  The auto-
mobile turned to the right and ran upon the sidewalk, but
was not able to continue until it had passed the cart because
of a pole standing in the sidewalk.  About five or six feet
from this pole the automobile stopped.  The plaintiff drove
to the right so far that his off wheels rubbed against the rail,
and in this position the nigh wheels of his cart just cleared the
automobile.  While the plaintiff's team was in this position
he heard the car approaching from behind.  He looked back,
and, as he testified, saw it 200 feet away.  He could not turn
from the track in the position he then occupied by reason of
the presence of the automobile.  He urged his horses and
made an effort to pass the automobile.  He had partly
passed the automobile and was turning away from the rail-
road track when the car came up behind him and the run-
ning board of the car, after clearing the plaintiff's rear wheel,
struck his forward wheel, causing a jolt which threw the
plaintiff off the cart to the ground, and in that position the
wheel of the cart crushed and injured him.

The case was tried in the Superior Court in Washington
County before Mr. Justice Brown and a jury on the first
and second days of December, 1910, and resulted in a verdict
for the plaintiff for $15,000.  The defendant moved for a
new trial on the grounds that the verdict was against the
evidence and the weight thereof; that it was, on the evidence
in the case, contrary to the law as given to the jury by the
court; that the damages awarded were excessive; that coun-
sel for the plaintiff in arguing said case to the jury on the
subject of damages stated to the jury, "They say country
juries give small damages;" that since the trial the defendant
has discovered evidence of facts of which the defendant had

no knowledge prior to said trial and at said trial could not have discovered by the exercise of reasonable diligence.

The motion for a new trial was heard January 11, 1911, and on February 10, 1911, was denied. February 17, 1911, the defendant excepted to the decision denying its motion for a new trial and gave notice of its intention to prosecute a bill of exceptions upon all its exceptions in the case. Within the time, and in accordance with the procedure required by statute the defendant presented its bill of exceptions and the transcript of the testimony which were severally allowed by the justice presiding.

The case is now before this court on said bill of exceptions.

The exceptions are as follows: The first exception is to the admission by the court of questions numbers 59 and 60 and the answers thereto of the witness, George B. Capron, found on page 44 of the transcript of testimony. The second exception is to the admission by the court of question number 61 and the answers thereto of the witness, George B. Capron, all as found on pages 44, 45 and 46 of the transcript of testimony. We will consider these exceptions together. On page 39 of the transcript objection was made to the following question: "42 Q. While Mr. Champlin was there or while they were picking him up did you hear anything said by the motorman?" The witness was then questioned by counsel for both plaintiff and defendant as to how long after the accident the statement inquired about was made. The witness stated that after seeing the collision he started immediately and got to the place in possibly three minutes, that he had been there "probably two or three, three or four minutes" when he heard the statement. On page 43 the court overruled the objection and defendant's counsel excepted. "59 Q. (By MR. CRAFTS.) Well, what was the whole conversation with the motorman? A. Well, the motorman stood in the front of the car putting on his gloves, as I remember it, and there was some gentleman at the side of me and he looked up at the car and he says—" THE COURT: "No, the question is what the motorman said,

not what the other man said."  "60 Q. State what the
motorman said.  A. The motorman said, 'There hasn't
anyone denied it.'"  Questions and answers fifty-nine and
sixty are the ones covered by the first exception.  We think
these questions were properly admitted.  On page 44, "61 Q.
What did the man say?  A. The man said, 'The railroad
(2) company was to blame.'  MR. PERKINS:  Now, I object to
any statement by a by-stander.  THE COURT:  Well, the
statement by a by-stander is necessary to understand the
motorman's statement."  Exception taken by Mr. Perkins.
WITNESS:  This gentleman stood in front of the car with
me and he said, 'The railroad company is to blame for
this,' and the motorman said, 'There has no one denied it,
has there?'"  Mr. Perkins moved to strike out the answer.
After further discussion, on page 46, Mr. Perkins said:
"Well, I think I will withdraw my motion because it applies
only to the part of the—possibly the motion would apply
only to that part."  THE COURT:  "You withdraw the
motion I understand?"  MR. PERKINS:  "I withdraw the
motion to strike it out and stand on the objection originally
to the question."  THE COURT:  "Very well, we will go
on."  The exception on page 44 therefore was to the ques-
tion "What did the man say?"  The court had ruled that
the statement of the by-stander was necessary to understand
the motorman's statement, and the exception was to this
ruling.  We cannot see how the court could have ruled
differently, as the statement of the motorman was entirely
unintelligible by itself.  The question therefore was proper.
Questions 59 and 60 and 61 were all inquiries permissible
(3) for bringing out the res gestae.  The question as we have said
was proper, and we think counsel should have insisted upon his
motion to strike out if he did not want the answer to stand.
Was the answer such that the court should have ordered
it stricken out regardless of the withdrawal of the motion
to strike out?  The answer could injure the defendant only
when taken in connection with the statement of the motor-
man, viz., "There has no one denied it, has there?"  Possibly

this might be regarded as a statement by the motorman that he was to blame for the accident. As a participant in the transaction, would not his statement to that effect made six or seven minutes after the accident, when the car was at a standstill by reason of the accident and the plaintiff was just being picked up or had just been picked up, be admissible as a part of the *res gestae.* We think it would.

(4) In *State* v. *Murphy,* 16 R. I. 530, Stiness, J., in considering the question of the admissibility of statements made after the happening of the transaction, said: "The principle upon which the admission of such evidence rests is, that declarations after an act may, nevertheless, spring so naturally and involuntarily from the thing done as to reveal its character, and thus belong to it and be a part of it; also to rebut all inference of calculation in making the declarations, and thus to entitle them to credit and weight as evidence of the transaction itself." In that case the statements admitted in evidence as part of the *res gestae* were made about ten or fifteen minutes after the deadly assault in question, and by the person who was assaulted. In *Graves* v. *The People,* 18 Colo. 170, cited in *Havens* v. *R. I. Suburban Ry. Co.* 26 R. I. 48, Hayt, C. J., adopted Mr. Wharton's definition of *res gestae,* as follows: "*Res gestae* are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that thus speaks. In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted. What they did or said is not hearsay; it is part of the transaction itself."

The third exception is to the admission by the court of question number 19 and the answer thereto of the witness, (5) Justice C. Haven, as found on page 56 of the transcript of testimony: "19 Q. Was there room for two teams to meet and pass? A. No sir, not without going on the sidewalk."

The exception was taken after the question had been answered. We think the admission was correct for the reason given by the court, "that the witness might not know the exact measurement and yet have sufficient information from seeing teams pass there or attempting to pass to know there was not room enough for two teams to pass between the car and the sidewalk." The witness had testified that the traveled road for carts and teams between the rail and the sidewalk was narrow. He could answer the question as he did, without knowing the exact measurement, if he had knowledge of the fact as to the possibility of two teams passing each other at the place in question.

The fourth exception is to the admission by the court of questions 54 and 55, and the answers thereto of the witness, Richard Slaughter, as found on page 71 of the transcript of testimony: "54 Q. Now, what was it the motorman said about the accident? Mr. Perkins: Now just a minute. Mr. Crafts: If you will come up here I will call the attention of the court to what I expect to prove by him. (Counsel confer with the court)." The objection was overruled and an exception taken. "55. Q. At the time to which you just referred what was it the motorman said? A. He thought he could pass him without hitting him." The witness had testified that he heard the motorman say something and had fixed the time as three or four minutes after the accident. We think the testimony was admissible as part of the *res gestae*.

The fifth exception is to the admission by the court of questions numbers 13 and 14 and the answers thereto in the deposition of the witness, William Adams, as found on page 86 of the transcript of testimony. "13 Q. Could Mr. Champlin have passed the automobile which was coming towards him in any other way than he did?" "14 Q. Could he have got away from the track or pulled away from the track any sooner than he did?" These questions were read from the deposition of the witness taken before the trial to be used at the trial. No objection was made to either

before the magistrate.   The questions were properly admitted.

The sixth exception is to the admission by the court of question number 16 and the answer thereto in the deposition of the witness, William Adams, as found on page 87 of the transcript of testimony.   "16 Q. Was there room at that place where he met the automobile for an automobile and a team to pass in the traveled part of the road?"   The question was proper.

The seventh exception is to the admission by the court of question numbered 78 and the answer thereto in the deposition of the witness, William Adams, as found on page 96 of the transcript of testimony.   "78 Q. Did you hear the motorman or conductor say anything after the accident? A.   No sir, only I heard the motorman say that he was sure he was going to miss him.   That is why he did not stop. He was sure he was going to miss him that is why he kept on going."   The exception is without merit, the question was a proper inquiry as to the *res gestae.*

The eighth exception is to the admission by the court of question number 80 and the answer thereto in the deposition of the witness, William Adams, as found on page 97 of the transcript of testimony.   "80 Q. What did they say?" The question immediately preceding was "Did you hear anybody say anything to the motorman about his being to blame for it?" The answer to question 80 was:   "Told him there was no need of that accident to be done if he had given the man two minutes time he would have got out of the way. I did not know the gentleman who was talking.   He was in an automobile."   Question 82 was:   "When he told the motorman that, what did he say?" A.   "I did not know it was going to be, because I made sure I would miss him.   That is why I did not stop."   The exception is without merit.

The ninth exception is to the admission by the court of the questions and answers thereto of the plaintiff, George E. Champlin, showing the wages and the work done by the plaintiff in his regular occupation of teamster and livery stable

keeper in the questions and answers beginning with question 7 on page 101 and extending to question 18 on page 105 of the transcript of testimony. The plaintiff had testified that he was working for the town at the time of the accident. "7 Q. What wages did you get from the town?" Objection was made to the question on the ground that there was no allegation in the declaration of special damages. The court had the allegation of the declaration read that the plaintiff was permanently injured "and he has been hitherto and will be for the rest of his life wholly incapacitated from working and earning the wages and acquiring the income which but for said injuries he would have earned and acquired." The objection was overruled and defendant excepted. An exception was noted to this class of testimony on page 104 of the transcript. The plaintiff then testified as to the work performed by him in answer to questions relative thereto up to and including question 18 on page 105. The testimony was admissible. The exception is without merit.

The tenth exception is to the admission by the court of questions numbers 91 and 92 and the answers thereto of the plaintiff, George E. Champlin, as found on pages 115 and 116 of the transcript of testimony. "91 Q. Was there anything that you can think of you could have done to have got out of the way faster than you did?" "Q. 92. Was there anything you could have done there that you didn't do to get out of the way sooner than you did?" The questions were properly admitted.

The eleventh exception is to the refusal by said justice to direct a verdict for the defendant, as appears on page 243 of the transcript of testimony. This will be considered later.

The twelfth exception is to the refusal by the justice at said trial to instruct the jury as requested by the defendant in its eighth request as found on page 261 of the record, viz., "If the jury reach the question of damages, they should not consider and the plaintiff is not entitled to recover any damages which may have resulted from his loss of earnings, income or profits in his business as a teamster and keeper of a

livery stable because such damages are consequential and special and are not alleged in his declaration." No evidence was submitted as to plaintiff's profits or loss of profits, income or earnings in his business of teaming or in the business of keeping a stable. Evidence was submitted as to his labor and the wages he received as a teamster and as to his labor in his stable. The request was properly refused.

The thirteenth exception was disallowed by the justice presiding, and as the defendant did not proceed to establish the truth of the same under cap. 298, Section 21, Gen. Laws, 1909, is not before this court.

The fourteenth exception to the charge of the court to the jury is as follows as found on pages 247 and 249 of the charge to the jury: "Was the defendant guilty of negligence which caused this accident? Because the defendant is not liable in this case unless it was guilty of some negligent act which resulted in this injury. You will have before you the declaration in your jury room. You can read it for yourselves. You will find that the count sets out or the declaration sets out that the plaintiff bases his right to recover on the negligence of the defendant company and if the plaintiff fails to satisfy your minds that the defendant was guilty of negligence then your verdict should be for the defendant. In other words, the plaintiff must satisfy your minds of two propositions: first, that he was guilty of no negligence himself which contributed to the injury; second, that the defendant was guilty of negligence which caused the injury."   .   .   .

"So here if you find that this accident was caused to the plaintiff by reason of the negligence of the motorman or of the conductor or of both, in that case the defendant is liable to the same extent that it would be if the defendant was an individual and had been there himself instead of by his servant and had cause the injury." The exception is without merit.

The fifteenth exception is to the charge of the court to the jury as follows as found on page 250: "In this case if this motorman, and it is claimed that such is the fact, was on the

(12) front part of the car, had charge of the motions of the car, and saw with an unobstructed view the plaintiff with his team upon this highway, saw that the plaintiff was cramped in a narrow place in the highway and forced near the track by reason of an automobile which was upon the other side of the highway opposite the plaintiff, if the motorman saw that and saw that by continuing with the motion of his car he would be likely to strike the wagon in which the plaintiff was riding and thus injuring him, he had no right to go in there and speculate upon his chances of possibly getting through without injury to the plaintiff." The exception is without merit.

The sixteenth exception is to the charge of the court to the jury as follows as found on page 251: "There is another rule of law which may be applicable in some phases of this case, depending somewhat on the view you may take upon the facts, and that is this, that even if the plaintiff by some negligent act of his did put himself into a place of danger by his own negligence, still if after he was in a place of danger through his negligence he was guilty of no further negligence, but did all that he could to save himself, all that he might be reasonably expected to do to avert the accident, and the motorman, if such be the case, saw the plaintiff and appreciated the peril in which he was placed in time to avert the accident it was the duty of the motorman to avert such an (13) accident and his failure to do so would become the proximate cause of the injury and the defendant would be liable in the case notwithstanding the original negligence on the part of the plaintiff. The rule of law as applicable to such a case I will give you in the following form: Even if the plaintiff was guilty of negligence in driving too close to the track, still, if after having done so he was guilty of no further negligence and did all he could reasonably be expected to do to avert the accident, it was the duty of the driver of the car if he saw and appreciated the peril in which the plaintiff was placed in time to slacken the speed of the car or stop it and avert the accident, to do so, and neglect on his part to do so

under those circumstances becomes the proximate cause of the injury and renders the company liable; the party who last has a clear opportunity to avoid the accident, notwithstanding the neglect of his opponent, is considered solely responsible." The instruction was correct.

The seventeenth exception is to the charge of the court to the jury as, follows, as found on page 253: "And if you find that he has lost anything by reason of this accident from the fact that he has not been able to perform his usual vocation, which is that of a stable keeper, as he told you, and also as a teamer, then to the extent that he has already suffered pecuniary loss in this respect, this will constitute an element of damages." As we said in considering (14) the twelfth exception, no evidence was submitted as to the plaintiff's profits or loss of profits in his business of teaming or in the business of keeping a stable. Evidence was submitted as to his labor and the wages he received as a teamster and as to his labor in his stable. The instruction was given upon the evidence introduced and could not apply to or cause the jury to consider, possible losses of the business of teaming or the business of keeping a stable, matters upon which no evidence whatever had been submitted. This exception is without merit for the same reasons as the twelfth exception.

The twenty-first exception is to the denial by the court of defendant's motion for a new trial because counsel for the plaintiff in arguing said case to the jury on the subject of damages and to induce the jury to render a verdict for a (15) large sum apart from the evidence in court and the law as given them by the court on the subject of damages stated to the jury, "They say country juries give small damages." In this certificate allowing the bill of exceptions the justice presiding said: "As to exception 21 above, it is to be observed that the grievance therein complained of was corrected on the spot upon counsel for the defendant calling attention to it. In this connection see affidavit of Albert B. Crafts." In the affidavit referred to, Mr. Crafts says that he made the

statement, which is complained of, and "that immediately, Mr. Perkins, attorney for the defendant, rose to his feet and claimed an exception to said expression; that immediately after Mr. Perkins made said claim, the court instructed the jury to wholly disregard the remark objected to, and that it was the duty of the jury to try the case on the evidence and upon the law as given the jury by the court; and not upon such remarks of counsel."

In *State* v. *Farr*, 29 R. I. 72, 79, in considering an exception to remarks of counsel made in argument, this court, Dubois J., said: "The Superior Court had full authority to control the conduct of the parties, witnesses, and counsel during the trial of the case. While errors of the court are the proper subject of exception, it is not suggested in this connection that the court was requested to do anything more than to allow the exception now being considered. This is clearly insufficient. The defendant should first have requested the court to instruct the jury to disregard the remarks. If he had done this and the court had refused, an exception to such refusal would have raised the question. If the court had complied with the request the incident would have been closed, for it is to be presumed that the jury would have obeyed the instructions. of the court." The Justice instructed the jury properly as to the words to which objection was made and no exception was taken thereto. The decision of the court denying defendant's motion for a new trial upon this ground was correct.

The twenty-second exception is to the denial by the court of defendant's motion for a new trial on the ground of newly discovered evidence as set forth in said written motion and as appears by the affidavits and transcript of testimony on file and made a part of the record of said cause.

In denying the defendant's motion for a new trial upon this ground, the justice presiding said: "It is not clear that this new evidence might not have been discovered before the trial by the exercise of due diligence, nor that its effect upon a second trial would be to reduce the damages. On the con-

trary, it appears to me that it might have been discovered and that it would have little effect on the damages. Mr. Breen, who is relied on to testify on another trial that he saw the plaintiff soon after the accident and that he then saw on him a truss such as are worn by ruptured persons, had made a written statement before the trial to the superintendent of the defendant company in regard to the case. What the nature of the statement was does not appear except that it was made in regard to this case and in it he didn't say anything about the truss. It does not appear that any effort was made to ascertain from this or any other person the plaintiff's physical condition before the accident, nor was any inquiry made of the plaintiff. He had lived in Westerly for five years before the accident. There is nothing to indicate that the information might not have been elicited from the plaintiff on cross-examination at the trial. Notwithstanding the rupture, if one existed, it does not appear to have affected the plaintiff to any considerable extent. He was able to do heavy work. The plaintiff, in fact, does not appear to have known that he had a rupture. In his affidavit he states that he thought he had a small kernel and some soreness, and he believed they were cured, but that he wore the truss out of caution. From Dr. Champlin's affidavit on file, it appears that the rupture caused the plaintiff no serious trouble.

(16)    "It is true that upon the trial, on direct examination, the plaintiff testified that his health up to the time of the accident was fine, that he hadn't had a doctor in twenty-eight or thirty years. No attempt was made on cross-examination to elicit the condition of his health before the accident.

"The case of *Burlingame* v. *Cowee*, 16 R. I. 40, presents features somewhat similar to the case at bar upon the point now under consideration. The plaintiff in that case testified at the trial that before the accident he had never been confined to the house and had never considered himself nervous. The defendant, on petition for new trial on the ground of newly discovered evidence, presented affidavits of

men who had worked with the plaintiff controverting his testimony in this respect.

"The Supreme Court said a new trial on the ground of newly discovered evidence which is applicable only in mitigation of damages will not be granted 'unless it is very clear that if the new testimony had been before the jury the verdict would be so manifestly excessive that the defendant would be entitled to a new trial on that account."

"Another consideration also influenced the Court in the above named case. The plaintiff had lived near the place of accident since 1870, and the Court believed if the plaintiff was subject to serious infirmities prior to the accident it could hardly fail to have been known to his neighbors. Says the Court: 'The defendant, though he was informed of the nature of the plaintiff's claim, made no inquiry among them.' The same may be said in this case. The superintendent, though he was informed of the nature of the plaintiff's claim and received a statement from Mr. Breen in regard to the accident, who then had the information which the defendant now desires to produce before another jury, made no inquiry from him."

An examination of the affidavits convinces us that the statement above quoted from the rescript of the justice presiding sufficiently covers the ground as to this exception.

The other exceptions to the decision denying the defendant's petition for a new trial are:

"18. To the denial by the court of defendant's motion for a new trial because said verdict for the plaintiff on the question of liability was manifestly and palpably against the evidence and against the weight of the evidence.

"19. To the denial by the court of defendant's motion for a new trial because the verdict for the plaintiff therein was and is on the evidence in said case contrary to the law as given to the jury by the court.

"20. To the denial by the court of defendant's motion for a new trial on the ground that the verdict rendered therein for the plaintiff for $15,000 damages was grossly

excessive and against the evidence and the weight of evidence on the question of damages."

(17)    On the question of liability the verdict is amply supported by the evidence. The plaintiff was fifty years old. He was able to do very heavy work and continued to do a great deal of it up to the accident. The evidence shows very serious injuries; that the pelvis was crushed, fractured front and back; that he has suffered great pain and will suffer pain in the future; that the injuries are permanent; and that he will be incapacitated for labor during life. The justice presiding at the trial who equally with the jury saw the witnesses and heard them testify has refused to disturb the verdict. The evidence in our opinion amply sustains his decision. The damages are not so large as to indicate passion or prejudice on the part of the jury, or to shock the conscience of the court.

The defendant's motion for the direction of a verdict was properly denied.

The defendant's exceptions are severally overruled, and the case is remitted to the Superior Court for Washington County, with direction to enter judgment for the plaintiff upon the verdict.

*A. B. Crafts,* for plaintiff.

*Everett A. Kingsley, Donald G. Perkins,* for defendant.