BEFORE THE FIRST DIVISION

MAY 27, 1957

**No. 60813.**—Hanimex USA, Inc., and Frank P. Dow Co., Inc. *v.* United States, protests 265625–K and 272530–K (San Francisco).—▮▮▮▮▮▮▮▮

WILSON, Judge: The merchandise here involved is invoiced as "Enlargers * * * CODE REPO," "enlargers cameras * * * CODE SEINO," "enlargers Laborator * * * CODE LATIS," "enlargers cameras Ducmat * * * Code DUCOS," "Enlarger Cameras Uncmat * * * Code UNCOS." It was assessed with duty at 45 per centum ad valorem under paragraph 228 (b) of the Tariff Act of 1930 under the provision therein for "projection lenses * * * frames and mountings therefor, and parts of any of the foregoing." Plaintiffs claim the importation in question properly dutiable at 15 per centum ad valorem under paragraph 1551 of the said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplemented by Presidential proclamation, T. D. 52820, as "photographic cameras."

The basis for the classification of these articles, as disclosed by the "REPORT OF COLLECTOR ON PROTEST" with the official papers, was by virtue of T. D. 51815, which reads as follows:

* * * Photographic enlargers are dutiable at 45 per centum ad valorem under paragraph 228 (b) as projection lenses and frames and mountings therefor, and not as cameras at 20 per centum ad valorem under paragraph 1551 or at 45 per centum ad valorem by virtue of the proviso in paragraph 1551. * * *

Certain illustrations, representing the photo enlargers herein invoiced as "REPO," "SEINO," "LATIS," "DUCOS," and UNCOS," were received in evidence as plaintiffs' illustrative exhibits 1 to 5, respectively (R. 10).

Two witnesses were called on behalf of the plaintiffs. Alfred H. Bass, vice president of the importing concern, importer of photographic goods, stated that he had been selling items of the character here imported for about 22 to 23 years and that he had used such items for approximately 2 years.

Testifying as to the nature and operation of the imported goods, the witness stated that instruments, such as those in question, are used to obtain permanently recorded enlargements on sensitized paper of processed negatives. He explained that an essential part of such instruments is a lamp housing, from which a lamp projects a light through the negative onto the piece of sensitized paper which is placed on a so-called baseboard or table, which is part of the instrument itself. The negative is placed in a unit of the instrument, known as a "negative carrier,"

similar in function to a "plate holder," which holds film in a camera. The witness further testified that, in projecting the image onto the paper, the lens mount is moved to vary the distance from the focal plane where the holder is, in order to obtain a sharp image on the paper, in the same manner as a camera is focused to obtain a sharp image on the film. After exposure, the sensitized paper is processed through a solution of developers, washers, and fixtures "just as we would do with ordinary film from a camera," and that, when finally washed, "you have your permanent paper image such as you have in any photograph." It also appears that these instruments are used for photocopy work wherein the negatives are reduced, rather than enlarged, in size.

The witness further stated that he had used cameras, such as a "press" camera, in the same manner as the imported articles, in order to obtain enlargements; that, for such use, all that need be done is to remove the ground glass at the back of the camera and put a light box therein as a source of light.

Mr. Bass then testified that he had seen articles, represented by plaintiffs' illustrative exhibits 2, 3, 4, and 5, used in the manner of a camera for making copies of charts, photographs, or manuscripts. When so employed, the instrument is placed in a horizontal or vertical position with an unexposed negative; "A chart or a photograph or a manuscript is placed in the baseboard of this instrument and that image is recorded onto the unexposed film that is placed into the carrier of this instrument." When so operating, the light-box switch of the instrument is turned off (R. 18). The witness explained that the "Repo" enlarger, as imported, could not be used for the dual purpose of enlargement and for making copies of charts, photographs, or manuscripts, as could the other types, but that, for the latter purpose, the "Repo" merely requires the insertion of a "carrier" or film holder to hold the unexposed film (R. 19).

With respect to the lenses for the imported instruments, Mr. Bass testified that the "Ducos" and "Uncos" articles (plaintiffs' illustrative exhibits 4 and 5) were imported with lenses, "packed separately but in the same shipment" (R. 9), but that the lenses for the "Repo," "Seino," and "Latis" articles were imported separately, stating, however, that such lenses were designed to fit these particular machines.

The witness described a camera as an instrument by which you record an image permanently on a piece of sensitized paper or film, while a projector is an instrument used to project an image temporarily for viewing purposes, as in the case of a cinema. It appears that when the involved instruments are used as enlargers, the recording is done outside of the machines, but that when used by employing a film holder with a negative, the recording is done within the instrument (R. 23).

Jack Hannes, partner of the importer herein, who, for some 10 years, had been engaged in the importation and distribution of cameras, enlargers, and lenses, stated that the involved articles do not contain any projection lenses, explaining that a projection lens "is a fixed aperture lens" and that it was not possible to use such a lens in these machines. He described a camera as "a piece of optical apparatus for the purpose of recording an object permanently onto a sensitized photographic surface," stating that the importations at bar were so employed. He defined a projector as a means for "viewing a transparent object" for a short time. In his opinion, a machine which enlarges a permanent picture "permanently" is a camera (R. 40).

In the determination of the issue herein, we deem it pertinent at this point to refer to certain decisions of this court and our appellate court as to the meaning of the term "photographic cameras." In *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673, the appellate court, in holding certain photolithographic camera screens properly classifiable under predecessor

paragraph 1453 of the Tariff Act of 1922 as parts of photographic cameras, and not under paragraph 218 of the said act as glass articles, page 140, stated:

These articles are used in making reproductions of photographs for printing purposes, either in newspaper or other publications, and in other photolithographic and photo-engraving work. The testimony shows they are used in two ways, first, in conjunction with a photographic camera, and, second, in a printing frame. When used in a camera, the screen is inserted in a special holder and focusing arrangement therein by which the screen can be moved to its particular focus, according to the wish of the operator, this holder, and the screen carried by it, being between the camera lens and the sensitive plate upon which the photograph is to be taken. These screens can be used in conjunction with any photographic camera which has the special holder and focusing arrangement above referred to, but without such equipment can not be so used. Any camera in which such a screen is used may, by removing the screen, be used for ordinary photographic purposes, but a camera to be used for reproducing purposes must contain such a screen.

and, at page 142:

We call attention, also, to the case of *American Steel & Copper Plate Co.*, Abstract 46545, 44 Treas. Dec. 476, where merchandise identical with that at bar was involved, under the provisions of paragraph 380 of the tariff act of October 3, 1913.

The court said:

It was evident from the testimony that the merchandise in question is an essential part of the reproduction camera. It was held that Congress in providing in paragraph 380 for photographic cameras and parts thereof generally, did not specify any particular kind of photographic camera or parts and it was to be presumed that they intended this paragraph to cover all varieties of photographic cameras and parts thereof.

The significance of the holding in the *American Steel* case (T. D. 41673), *supra*, lies in the fact that our appellate court considered certain articles used in conjunction with a photographic camera for reproduction purposes to be parts of photographic "cameras."

In holding certain merchandise dutiable as photographic cameras and parts, the court, in *Drem Products Corp.* v. *United States*, 54 Treas. Dec. 632, Abstract 7038, stated:

The testimony showed that the particular use of the article in question is for the enlarging of prints of photographic material. It differs from an ordinary photographic camera by reason of having an electric light, and is used by amateurs who have small cameras and desire larger pictures. From the record it was found that the merchandise in question is a species of camera used for enlarging photographs, and differs from the pathescope, moving picture machine, mirrorscope, or radiopticon, heretofore passed upon and held dutiable as projection lenses, in that it is used to provide a *permanent* representation of the picture or photograph enlarged while the moving-picture machine provides only a fleeting picture on the screen. * * * [Italics quoted.]

See, also, *United States* v. *Carl Zeiss, Inc.*, 27 C. C. P. A. (Customs) 12, C. A. D. 54, wherein the court, speaking of the provisions in paragraph 1551 of the tariff act, for "Photographic cameras and parts thereof," page 15, stated:

As is well known, there are many special forms of "cameras, panoramic, binocular, enlarging, etc." Webster's New International Dictionary. See also *United States* v. *E. Leitz, Inc.*, 24 C. C. P. A. (Customs) 139, T. D. 48622, where "Photo-micrographic cameras for photo-micrographing metals" were held to be dutiable as photographic cameras at 20 per centum ad valorem under paragraph 1551, *supra.*

The involved cameras are used for no purpose other than the taking of photographs, and the mere fact that they are used exclusively to photograph a partic-

ular object for a special purpose does not change their status as photographic cameras.* * *

Lexicographic and other authorities supply the following:

Webster's New International Dictionary, 2d edition, 1956, at page 850:

**enlarger,** *n.* One who or that which enlarges; specif., a camera used to produce an enlargement.

Collier's Encyclopedia, volume 4, page 360:

**Camera** (Latin *camera,* "chamber"), an enclosed box or bellows chamber with an aperture, or opening, through which the image of an object is recorded on a light-sensitive material. In all but the pinhole camera the aperture is fitted with a lens, by which the rays of light are directed to the recording material. * * *

The nature of the involved instruments, as disclosed by the record and the illustrative exhibits, indicates that all of them, with the exception of the "REPO" (plaintiffs' illustrative exhibit 1), are used for the dual purpose of obtaining permanently recorded enlargements on sensitized paper of a processed negative (R. 11–12) and as ordinary cameras to make copies of charts, photographs, or manuscripts (R. 17). The record establishes, however, that the "REPO," plaintiffs' illustrative exhibit 1, was designed to receive a carrier or film holder and that this was all that the article needed to be used as a camera (R. 19).

With respect to the merchandise, represented by illustrative exhibit 2, the record and descriptive literature discloses that this instrument, in addition to its use as a camera for reproduction purposes, also has independent uses as a projector. Plaintiffs' illustrative exhibit 2 states:

"DURST 609" supplemented by suitable accessories is an accomplished projector (fig. 12) for * * * black-and-white and colour transparencies.

The projection apparatus and the camera elements which are combined in this unit constitute a separate and distinct article, which is something more than either. (See *Garrard Sales Corp.* v. *United States,* 35 C. C. P. A. (Customs) 39, C. A. D. 369.)

It does not appear that the projection element in the merchandise, represented by plaintiffs' illustrative exhibits 1, 3, 4, and 5, has an independent function as a projector, but the record and descriptive literature covering these articles disclose that the projection apparatus is used in conjunction with, and as an essential part of, the camera apparatus and other elements therein contained. Such projection apparatus is an incidental feature to the ultimate and designed use of these machines as cameras in the taking and reproduction of photographs. Further, the use of such instruments is not always accompanied by magnification, but it appears that, in some cases, there is an actual decrease in the size of the image and that their function is not for viewing purposes, as is the situation in the case of projectors. Furthermore, the uncontradicted testimony of plaintiffs' witness, Hannes, indicates that the lenses employed in these instruments are not projection lenses (R. 38).

On the basis of the record herein presented and the cited authorities, we are of opinion and hold: That the merchandise, represented by plaintiffs' illustrative exhibits 1 and 3, is properly classifiable under paragraph 1551 of the Tariff Act of 1930, as modified, at the rate of 15 per centum ad valorem as "photographic cameras," as claimed; that the merchandise, represented by plaintiffs' illustrative exhibit 2, is dutiable neither as a photographic camera, as claimed, nor as "projection lenses * * * frames and mountings therefor, and parts of any of the foregoing," as classified. However, inasmuch as plaintiffs have failed in their burden of establishing the correct classification of the merchandise, the protest claim with respect to such merchandise is overruled, without affirming the col-

lector's classification. We further hold that the merchandise, represented by plaintiffs' illustrative exhibits 4 and 5, is properly classifiable under paragraph 1551 of the Tariff Act of 1930, as modified, as photographic cameras, as claimed.

For reasons hereinafter stated, however, judgment with respect to the foregoing items will not be issued at this time, inasmuch as we have determined that, in the interest of justice, the protests herein should be restored to the calendar for the sole purpose of permitting the parties to introduce evidence as to the value of the lenses, which were imported with the merchandise represented by plaintiffs' illustrative exhibits 4 and 5.

It appears that the "Ducos" and "Uncos" (plaintiffs' illustrative exhibits 4 and 5) were imported in a knocked-down condition and that these instruments were imported with lenses packed separately but in the same shipment. In our opinion, these lenses, although separately packed, which are integral and essential parts of the enlarging cameras with which they were imported, constitute entireties and are classifiable as such. *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232; *United States* v. *Kronfeld, Saunders, Inc.*, 20 C. C. P. A. (Customs) 57, T. D. 45679. The rate of duty applicable to photographic cameras under paragraph 1551, as modified, *supra*, is 15 per centum ad valorem. However, paragraph 1551 of the Tariff Act of 1930 contains a proviso that "if the photographic lens is the component of chief value of the camera or of the part in which it is imported, such camera or part, including the photographic lens, shall be dutiable at the rate applicable to such photographic lens when imported separately." Paragraph 228 (b) of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802, provides a rate of duty of 25 per centum ad valorem on "Photographic lenses, finished or unfinished, not specially provided for." No proof has been offered in this record as to the components of chief value of the lenses imported with the merchandise, represented by plaintiffs' illustrative exhibits 4 and 5. Accordingly, we deem it proper to set aside the submission of the protests herein and restore the cases to the calendar to afford the parties an opportunity to offer evidence on this matter.

Inasmuch as all of the items herein involved are covered by both protests herein and, consequently, a final order cannot be entered disposing of all of the claims herein, it is

ORDERED that the submission of the protests herein be set aside and the cases restored to the next San Francisco calendar of this court for the limited purpose of giving the parties an opportunity to introduce evidence as to the relative values of the lenses, which were imported with the merchandise, represented by plaintiffs' illustrative exhibits 4 and 5, and of the enlarging cameras with which they were imported.