(C. D. 1334)

C. J. TOWER & SONS *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 12, 1951)

*John C. Ray* for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Arthur R. Martoccia*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

MOLLISON, Judge: The merchandise the subject of this protest was assessed with duty at the rate of 33⅓ per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 412) for "manufactures of wood  *  *  *  not specially provided for." Various claims were made in the protest and by timely amendment thereof, but all were abandoned save the claim

that the merchandise is properly dutiable at the rate of 50 cents per thousand feet, board measure, under the provision in paragraph 401 of the said act, as amended by the Canadian Trade Agreement, T. D. 49752, for—

  \*   \*   \*   sawed lumber and timber not specially provided for; all the foregoing, if of fir, spruce, pine, hemlock, or larch   \*   \*   \*

plus $1.50 per thousand feet, board measure, under the provision for lumber in section 3424 of the Internal Revenue Code (26 U. S. C. § 3424), as modified by the aforesaid Canadian Trade Agreement.

There is no question but that the merchandise consisted of spruce, and the only question involved is whether, as imported, it was merely lumber, as claimed by the plaintiff, or something more than lumber, to wit, a manufacture thereof, as claimed by the defendant.

The facts which gave rise to the importation are as follows: Certain emergency temporary housing was to be shipped abroad from the United States. Such material was required to be packaged in accordance with detailed blueprint specifications supplied by the Federal Public Housing Authority. The packages in which the housing material was to be shipped were each to consist of a wooden form or framework, reinforced with angle irons and steel banding, the inside of the form or framework to be covered by asphalt board, building paper, and waterproof paper so as to cover the contents except for certain ventilation and drainage openings. The merchandise in issue consists of the wooden parts of the form or framework which were imported from Canada by the domestic supplier of the housing material which was ultimately to be shipped abroad.

It is undisputed that the merchandise here involved consists of the wooden parts to make 80 of the packages in which the housing material was to be shipped. The other materials for the packages, such as metal parts and the asphalt board and building and waterproof paper, were not included in the importations at bar, and were to be supplied from domestic or other sources.

There is in evidence as exhibit 2 a blueprint labeled "Pre-cut Crating Mat'l." which was identified by the office manager of the exporting company, who made the importations, as the blueprint which was supplied by the ultimate consignee in connection with the order for the imported material. The blueprint shows 37 different sizes and shapes of wooden material and the number required of each size and shape, and the witness testified that the total number of pieces shown on the blueprint constituted a "set" to make 1 framework of the type described above. An examination of exhibit 2, as well as the testimony of witnesses, indicates that the pieces involved were of specific sizes with respect to length, width, and thickness, and also that the ends of each piece were cut to exact dimensions,

some square, some diagonally, and some half-lapped, and, in addition, some pieces were dadoed or grooved. As imported, the pieces had been bound in bundles, each bundle containing pieces of the same size and identified by marks thereon corresponding to the marks found upon the blueprint specifications.

Counsel for both parties have cited the case of *C. J. Tower & Sons et al.* v. *United States*, 69 Treas. Dec. 308, T. D. 48152. That case involved knocked-down crates, consisting of the various pieces necessary for the construction of crates (except the nails), cut to specified lengths and dimensions, and the pieces bound in bundles according to the various sizes, which were marked on the bundles, each shipment containing enough of each size to make a given number of crates. It was there held that the fact that the pieces of wood had been cut to size and bundled to length for the single purpose of being assembled into crates of the sizes conforming to the specifications of the ultimate consignee, was sufficient to warrant removing their classification from the provision for sawed lumber, and as they were specially prepared and fitted for one definite use, viz, to be united as crates, they were held to be properly dutiable under the provision for manufactures of wood, not specially provided for.

Counsel for the plaintiff, in the brief filed in its behalf, seeks to distinguish the situation in the *Tower* case from that in the case at bar by pointing out that in the former case the imported material was sufficient to produce complete, or substantially complete, crates, whereas the imported material in the case at bar consisted only of part of the materials necessary to construct the package in which the housing material was to be exported.

We do not regard this distinction as valid, as we are of the opinion that the determination of the issue depends upon whether the cutting and shaping processes to which the wood material was subjected prior to importation removed it from the category of lumber and thereby created an article made from lumber—not necessarily an article complete and useful by itself, but one having a name, character, or use distinct from the material from which it was made.

It can scarcely be doubted that by reason of the many and varied cuts and grooves made in the wood in Canada, it lost its identity as lumber material and was not only dedicated to the construction of frameworks for the export packages, but was definitely appropriated for that purpose. The article that was created was a framework, complete or substantially complete in itself, and recognized as such as a part of another article—the export package.

A case very much in point is *United States* v. *C. S. Emery & Co.*, 18 C. C. P. A. (Customs) 208, T. D. 44399, which contains a clear

exposition of the distinction between lumber as a material, lumber which has been dedicated to the making of an article but which has not been processed to the extent that it has become the article for which the material was intended, and wood which has been processed into an article. The imported wood in question falls into the latter category.

The case at bar differs from the recently decided case of *Close & Stewart v. United States*, 26 Cust. Ct. 344, Abstract 55169, relating to crating material which had been cut to specific sizes but had not been dedicated to the manufacture of any particular crates and had to be further cut and ripped in order to fit it for the manufacture of crates. There, although possibly dedicated to the manufacture of crates, the lumber still remained a material; here, its use as a material had been destroyed and a particular article or thing was made.

Judgment will therefore issue overruling the protest claims accordingly.

CONCURRING OPINION

COLE, Judge: This case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al. v. United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.