**U. S. INDUSTRIAL PRODUCTS CORP.**

**v.**

**UNITED STATES.**

**C.D. 3476; Protests 61/10273–137–61.**

United States Customs Court, Second Division.

June 17, 1968.

Brooks & Brooks, New York City (Thomas J. McKenna, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Richard J. Kaplan and Harold L. Grossman, New York City, trial attorneys), for defendant.

Before RAO, FORD, and MALETZ, Judges.

MALETZ, Judge:

These protests, which were consolidated for trial, involved certain moldings and frame sections having wooden cores and metal exteriors. The imports were uniformly assessed with duty by the collector at a rate of 19 percent ad valorem under paragraph 397 of the Tariff Act of 1930, as modified, as articles in chief value of metal.[1] Plaintiff claims that the mold-

---

1. Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, provides:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc aluminum, or other base mettal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

\* \* \* \* \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*) . . . 19% ad val.

ings are properly dutiable at 16⅔ percent ad valorem under paragraph 412 of the Tariff Act of 1930, as modified, as "manufactures of wood * * * not specially provided for,"[2] and that the frame sections are likewise classifiable under paragraph 412, as modified, as "mirror frames"[3] in chief value of wood dutiable at 14 percent ad valorem.

There is, of course, a presumption that the collector found every fact necessary to sustain his classification. E. g., E. I. du Pont de Nemours & Co. v. United States, 27 CCPA 146, 149, C.A.D. 75 (1939); United States v. Marshall Field & Co., 17 CCPA 1, 5, T.D. 43309 (1929). Plaintiff sought to overcome this presumption by establishing that the articles are, in fact, in chief value of wood. Its sole proof of this at trial consisted of responsive answers to two interrogatories (i. e., interrogatories 10 and 11) it had propounded under a commission to an official of the company that had manufactured and exported the articles in question. At an earlier stage of the case, when the interrogatories to be propounded to this witness had been filed with the court and a copy served on defendant, the latter had interposed no objection to them; however, at the trial, defendant indicated for the first time that it had certain objections relating to the substance of the interrogatories and the answers thereto.[4] The parties then agreed that the interrogatories and answers were to be received in evidence "subject to the court's reserving its ruling upon those objections until after the defendant

has had an opportunity to state those objections in its brief." (The interrogatories and answers were received in evidence upon this basis.) In this setting, defendant in its brief now raises two objections to the answers given to interrogatories 10 and 11 and moves to strike them from the record. Its first objection is that the witness "was neither factually nor administratively qualified to answer said interrogatories"; its second, that the answers are inadmissible as hearsay. For the reasons set out below, we conclude (i) that defendant's first objection lacks merit; and (ii) that its second objection is in reality an objection to the interrogatories rather than to the answers thereto and that it comes too late. We hold, therefore, that plaintiff has established that the articles claimed to be dutiable at 16⅔ percent and 14 percent ad valorem are in chief value of wood. We hold, in addition, that plaintiff's further proof at trial (which is discussed below) has established that the articles claimed to be dutiable at 14 percent are in fact "mirror frames" under paragraph 412 of the Tariff Act, as modified.

As to the first issue, the background facts are these. In April 1963, plaintiff filed a motion pursuant to our rule 21(a) for the issuance of a commission to take the deposition in Stuttgart, Germany, of one Gerd Simon, an employee of the manufacturer-exporter, regarding the component material of chief value.[5] Without objection, the commission was issued in May 1963 by the court. In the following month the parties stipulat-

---

2. Paragraph 412 of the Tariff Act of 1930, as modified by T.D. 52373, provides:

 Manufacturers of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:
 * * * * *
 Other (except * * *)...16⅔% ad val.

3. Paragraph 412 of the Tariff Act of 1930, as modified by T.D. 54108, provides:

 Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

 * * * * *
 * * * and picture and mirror frames . . . 14% ad val.

4. Defendant did not file any cross-interrogatories or present any rebuttal evidence.

5. Rule 21(a) authorizes the issuance by the court of a commission "to examine witnesses resident in another country * * * whenever it shall appear to the satisfaction of a judge * * * that the testimony of said witnesses is necessary and important * * * and that the attendance of such witnesses cannot reasonably be had."

ed that Friedrich Schock would be substituted for Simon. Thereafter, on July 26, 1963, plaintiff—in accordance with rule 21(f)—filed with the court and served on defendant 11 interrogatories to be propounded to Schock in Stuttgart.[6] Defendant filed no objection to any of these interrogatories and advised that it would not file cross-interrogatories "at this time." In these circumstances, the court, on August 12, 1963, pursuant to rule 21(g), appointed the American Consul (or other consular officer) in Stuttgart as a commissioner to examine Schock under oath on the interrogatories.[7]

The commission and interrogatories were forwarded to the American Consulate in Stuttgart and on October 9, 1963, Schock appeared there before a consular officer to give his deposition. In response to the first nine interrogatories, he testified under oath that he was associated with the manufacturer-exporter since 1948; that the firm was engaged in the manufacture of "decorative moldings of plastics, metal, and wood"; that in the years 1959 and 1960 (which are the revelant ones here) he was vice president of the firm; that his duties were "[g]eneral supervision and organization of the entire factory and of the sale, of the entire commercial and technical management" [sic]; that he was familiar with the shipments involved here "but not in detail"; that the shipments in issue were manufactured under his super-

vision but not in detail "because the extent was too large"; and that the cost records pertaining to the merchandise involved were kept "[u]nder my supervision, not by me personally." The tenth and eleventh interrogatories and Schock's initial answers thereto are reproduced below:

10. If the cost records * * * [covering the merchandise in issue] were kept either by you personally or under your supervision will you please state if said records indicate the actual cost, in the currency of purchase, of the wood component material and the metal component material of the molding exported to U. S. Industrial Products Corp. as of the time when nothing remained to be done to said materials except to join them together into the finished product?

A. Yes, but in D-Mark, not in US $; calculated in D-Mark, charged in US $; the main thing here is whether just the costs are clearly evident, and that is what they are.

11. If your answer to question "10" is in the affirmative please indicate, with respect to items shipped to the said U. S. Industrial Products Corp. during the period June 15, 1959 to December 31, 1960, what your records disclose as to the actual cost of the wood

6. Rule 21(f) provides: "Interrogatories and cross-interrogatories for the examination of witnesses under a commission * * * shall be filed with the clerk of the court and a copy served upon the opposite party within the time fixed by the court. If there be objections either to the interrogatories or cross-interrogatories, such objections shall be filed with the clerk of the court and may be passed upon by the judge or the division of the court having jurisdiction of the subject matter, or may be filed with the papers and passed upon at the trial."

7. Rule 21(g), to the extent relevant, provides as follows: "Such commissions or letters rogatory to take depositions may be issued to an American consul * * * and forwarded within a time set by the

court, by the attorney, or applicant, together with the interrogatories and cross-interrogatories attached. The answers of each witness under oath to both direct and cross-interrogatories shall be in writing and subscribed to by said witness. Thereupon the commissioner, or authority to whom letters rogatory are directed, shall return the same to the clerk of the court, through proper channels, and the testimony so taken may be read upon the trial of the case and shall be considered with the same force and effect as though the witness were personally present, subject to any and all objections as to competency, materiality, and relevancy, which objections may be made at the time said deposition is offered."

component material and the actual cost of the metal component material in each item of molding having a wood cost in excess of the metal cost. In supplying this information be sure not to include any item—

(a) in which the cost of the metal component material exceeds the cost of the wood component material, or

(b) which is composed in part of any material in addition to wood and metal.

Also, please use the following headings in furnishing the information required by this question:

SCHOCK INVOICE

| No. | Date | Item No. | Cost of Wood Component | Cost of Metal Component |
|-----|------|----------|------------------------|-------------------------|

A. I am not able now to give the different items, but I am willing to give a list of all these different invoices and profiles according to the above scheme in the years as indicated in the question. It will take about two weeks. If I had known that you want the different figures, I had brought them with me.

---

On February 27, 1964, Schock again appeared before the consular officer in Stuttgart and submitted under oath a written schedule of the different items of molding and frame sections, composed only of wood and metal and in chief value of wood, shipped to plaintiff from June 15, 1959, to December 31, 1960. The schedule covered 113 items of moldings and frame sections, each identified by both a code and invoice number, and listed for each such item the actual cost of the wood and the actual cost of the metal, in the currency of purchase (deutsche marks), at a time when nothing remained to be done to the component materials except to join them together.[8] The evidence thus adduced established that wood was the component material of chief value with respect to each of the 113 items. For that evidence satisfied the requirement—uniformly imposed—that "the proper method of determining component material of chief value is by determining the value of the separate parts of the article at the time when they are ready to be combined to make the the completed article." United States v. Bacharach, 18 CCPA 353, 355, T.D. 44612 (1931). See also e. g., United States v. Rice-Stix Dry Goods Co., 19 CCPA 232, 234, T.D. 45337 (1931); Ross Products, Inc. v. United States, 52 Cust. Ct. 51, 55, C.D. 2435 (1964); Commercial Adolfo S. Pagan, Inc. v. United States, 48 Cust.Ct. 210, 216, C.D. 2337 (1962).

We consider now defendant's motion to strike this evidence, starting with its first objection that "plaintiff has failed to satisfactorily and adequately establish that * * * [Schock] had sufficient personal or specific knowledge of or definite factual familiarity with, the imported articles, their construction, and the costs of the metal and wood components from which they were produced, at the time when nothing remained to be done to said materials except to join them together into the finished product as imported." This objection is clearly without merit considering that Schock's deposition disclosed without contradiction (i) that he was responsible for general supervision of the entire plant and its sales; (ii) that the shipments were

8. It was further shown by plaintiff at trial that the 113 items covered in the Schock schedule encompassed all the imported articles here in issue.

manufactured under his supervision; and (iii) that the cost records covering the merchandise were kept under his supervision. To be qualified to testify about business records, it is not necessary that the witness have personally prepared or examined each record; it is sufficient if the witness had supervision of the records. American Express Company v. United States, 30 Cust.Ct. 333, Abstract 57048 (1953); United States v. Mortimer, 118 F.2d 266, 269 (2d Cir. 1941); Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co., 18 F.2d 934, 937 (2d Cir. 1927); E. I. Du Pont de Nemours & Co. v. Tomlinson, 296 F. 634, 639 (4th Cir. 1924); Northern Pacific Ry. Co. v. Keyes, 91 F. 47, 58–59 (C.C., D.N.D.1898). See also 5 Wigmore On Evidence (3d ed.) § 1530 (hereinafter cited as "Wigmore").

Defendant's second objection is that the evidence is hearsay which does not fall within the exception provided by the Official Records Act, 28 U.S.C. § 1732, for business records made in the regular course of business. Its argument is that plaintiff has failed to lay a proper foundation for the evidence by producing the cost records and showing that they were made in the regular course of business. We find it unnecessary, however, to decide this question since, as is discussed below, the objection is untimely in any event and has, therefore, been waived.

The principles involved are well established. At the outset, there is a basic distinction between an objection to a question and a motion to strike testimony—a distinction which stems from the fact that an opponent is required to make an objection *as soon as the question is stated,* and before the answer is given; unless the inadmissibility was due, not to the subject of the question, but to some feature of the answer." 1 Wigmore, 323. [Emphasis quoted.] The object "is to prevent a party from knowingly withholding his objection, until he discovers the effect of the testimony and then if it turns out to be unfavorable to interpose his objection. Such a course

could not be allowed." Marsh v. Hand, 35 Md. 123, 127 (1871). Put otherwise "[a] party will not be permitted to speculate as to what the testimony will be, and then move to strike the answer if not to his liking." Lambert v. United States, 26 F.2d 773, 774 (9th Cir. 1928). In these circumstances a motion to strike an answer which is responsive to a question and which ought to have been objected to at the time the question was asked is in reality an objection to the question and comes too late. See 1 Wigmore 325, 331–32; State v. Forsha, 190 Mo. 296, 88 S.W. 746, 4 L.R.A.,N.S., 576 (1905); Sanger v. Bacon, 180 Ind. 322, 101 N.E. 1001 (1913). On the other hand, where the question is unobjectionable, but the answer is nonresponsive, a motion to strike is appropriate. 1 Wigmore 325, 332. In that situation, since "the question did not reasonably call for the answer given, the opponent could not be blamed for failure to anticipate it." Ladd, Objections, Motions and Foundation Testimony, 43 Cornell L.Q. 543, 557 (1958). Thus, "[t]he difference cannot be overlooked between unresponsiveness as a ground for a motion to strike * * and its use * * * only as an excuse for having failed to interpose a timely objection to the question when asked." Ibid. See also McCormick On Evidence (1954) 115–116; Jones On Evidence (5th ed.) §§ 975, 979.

As to interrogatories for the examination of witnesses, the general requirement (in the absence of a statute or rule to the contrary) is that the objection must be made before trial if the ground of the objection was such as might have been obviated or removed if presented at that time. See 1 Wigmore 326; 26A C.J.S. Depositions § 101, p. 460. See also e. g. EHL v. J. R. Watkins Medical Co., 216 Ala. 69, 112 So. 426 (1927); Wallace v. Elliott, 220 Ala. 125, 124 So. 286 (1929); Champlin v. Pawcatuck Valley St. Ry. Co., 33 R.I. 572, 82 A. 481 (1912). This requirement is based on the equitable consideration that an objection to a question contained in

an interrogatory (or deposition) should be brought to the attention of the party relying on such interrogatory (or deposition) in time to enable him to correct any defect or to substitute additional evidence. See e. g., Doane v. Glenn, 21 Wall. 33, 35, 22 L.Ed. 476 (1874); Bibb v. Allen, 149 U.S. 481, 488–489, 13 S.Ct. 950, 37 L.Ed. 819 (1892); Beatty Brokerage Co. v. Gulf, C. & S. F. Ry. Co., 17 F.2d 480, 481 (5th Cir. 1927).[9]

■ Our rule 21(f) obviously incorporates this requirement providing, as it does (see note 6, supra), (i) that interrogatories for the examination of witnesses under a commission "shall be filed with the clerk of the court and a copy served upon the opposite party * * *," and (ii) that objections to such interrogatories "shall be filed with the clerk of the court and may be passed upon by the judge or division of the court having jurisdiction of the subject matter, or may be filed with the papers and passed upon at the trial." The rule is manifestly designed to provide notice of possible evidentiary shortcomings so that they may be remedied before trial; the filing requirements of the rule would be meaningless otherwise. This is to say that when an interrogatory for the examination of a witness under a commission is filed with the court pursuant to rule 21(f), an objection to the interrogatory must be interposed promptly, if the ground of the objection is such as

might be obviated or removed before trial. Nor is a different result required by rule 21(g) which provides that "[t]he answers of each witness under oath to * * * [the] interrogatories shall be in writing and subscribed to by said witness * * * [and thereupon] the commissioner shall return the same to the clerk of the court * * * and the testimony so taken may be read upon the trial of the case and shall be considered with the same force and effect as though the witness were personally present, subject to any and all objections as to competency, materiality, and relevancy, which objections may be made at the time said deposition is offered." See note 7, supra. Cf. rule 32(c) (1) of the Federal Rules of Civil Procedure, note 9, supra. In contrast to rule 21(f) which is applicable to *objections to the interrogatories*, rule 21(g) is concerned with objections to the *answers to the interrogatories* at the later stage of the proceeding. Rule 21(g), in other words, is directed to a situation where the interrogatory itself is unobjectionable but the answer is subject to possible defect on the ground of competency, materiality or relevancy—in which case, objection may be withheld until trial. See Ross Products, Inc. v. United States, 43 Cust.Ct. 186, 187–88, C.D. 2124 (1959), affirmed on other grounds, 48 CCPA 1, C.A.D. 752 (1960). Any other construction would not only make meaningless the filing requirements

9. In this connection, rules 32(c) (1), 32 (c) (2), and 32(c) (3) of the Federal Rules of Civil Procedure provide as follows:

(1) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

(2) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind

which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.

(3) Objections to the form of written interrogatories submitted under Rule 31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other interrogatories and within 3 days after service of the last interrogatories authorized.

The Federal Rules of Civil Procedure are, of course, not applicable to the Customs Court. American Mail Line, Ltd. v. United States, 34 CCPA 1, C.A.D. 335 (1946).

of rule 21(f), it would do violence to the general principle, previously discussed, that an objection to an interrogatory must be made before trial, if the ground of the objection was such as might have been obviated had it then been presented.

■ What remains is to apply these principles to the facts of the present case. In the first place, it is apparent that the cost schedule which Schock submitted was responsive *in toto* to the eleventh interrogatory. For that interrogatory requested him, in essence, to fill in certain columns of figures under certain designated headings based on information contained in his company's cost records—which is what he did. The question having reasonably called for the answer given, defendant's motion to strike is in reality an objection to the interrogatory itself—not to the answer. But the objection comes too late; in the circumstances of this case, it should have been made promptly after the interrogatory was filed in order to have provided plaintiff opportunity to overcome the claimed defect before trial. Had objection then been interposed to the interrogatory, there is no doubt that plaintiff could have taken the steps necessary to cure the ground of the objection by requiring Schock to produce the cost records and show that they were made in the regular course of business. See Doane v. Glenn, supra, 21 Wall. at 35; Bibb v. Allen, supra, 149 U.S. at 488–489, 13 S.Ct. 950; Beatty Brokerage Co. v Gulf, C. & S. F. Ry. Co., supra, 17 F.2d at 481. The point is that "[c]ounsel may not withhold objection until he has ascertained whether evidence is helpful or disadvantageous to his case and, if it develops that the evidence is unfavorable, then have it excluded." American Surety Co. of New York v. Scott et al., 63 F.2d 961, 964 (10th Cir. 1933) and cases cited. See also Ladd, op. cit, supra, 556–57. We, therefore, overrule defendant's· motion to strike plaintiff's evidence as to the component material of chief value.

■ Plaintiff having shown by that evidence that all the imported articles are in chief value of wood, the last problem is to determine whether it has also proven that the frame sections involved in several of the protests are "mirror frames" under paragraph 412 of the Act, as modified, and thus dutiable at 14 percent ad valorem. On this question, plaintiff's proof at trial consisted of the unrebutted testimony of one of its officials who served initially as vice president and then as president during the period from 1959 to 1960 when the importations in issue took place. The witness testified that during the foregoing period he was responsible for placing all orders for the merchandise in issue, arranging for the entry of the goods through customs, the delivery of the goods to plaintiff and to plaintiff's customers. He further testified that in ordering the merchandise claimed to be mirror frames, he indicated certain specifications to the manufacturer. Referring to two frame sections in evidence as illustrative exhibits, he testified that both were cut to a specific size to fit the size of a mirror; that both had been mitered;[10] that one possessed a "kerf line"[11] to permit assembly with additional sections of a frame; and that the other had a hole that facilitated a different means of assembly. He testified, in addition, that the frame sections were dedicated to use as mirror frames (whereas the balance of the items consisting of the moldings, were not dedicated to any particular use). The unrebutted testimony thus presented by plaintiff demonstrates that the sections have no use other than as frames or enclosures for mirrors, and, therefore, constitute "mirror frames" for tariff purposes. The frames, it is true, were imported in unassembled sets of four pieces each, i. e., in a knocked-down condition; but

10. A mitered end is one which has been beveled at an angle for the purpose of joining it to another end. See Webster's New International Dictionary (2d ed.).

11. A kerf is a slit or notch. Ibid.

the mere necessity of assembly after importation is of no consequence. See United States v. Kronfeld, Saunders, Inc., 20 CCPA 57, T.D. 45679 (1932); Pan American Airways, Inc. v. United States, 16 Cust.Ct. 134, C.D. 1000 (1946); Gallagher & Ascher Company v. United States, 44 Cust.Ct. 355, Abstract 63848 (1960).

 We hold, in summary, that the merchandise claimed to be dutiable at 16⅔ percent ad.valorem is in chief value of wood, and that the articles claimed to be dutiable at 14 percent ad valorem are mirror frames, also in chief value of wood. The protests are sustained and judgment will issue accordingly.

FORD, J., concurs.

## DISSENTING OPINION

RAO, Chief Judge:

I regret that I am unable to concur with the conclusion reached by my colleagues in the instant case. Specifically I am of opinion that the objections to the answers to interrogatories 10 and 11 of the deposition of the witness Friedrich Schock were well taken, and, therefore, the findings of the majority with respect to component material of chief value, which rested upon those answers, were without evidentiary support.

This view does not embody disagreement with the general principles underlying the decision of the majority to the effect that a person under whose supervision records are kept is competent to testify as to the contents of those records, and that an objection to an interrogatory, or an objection to an answer to an interrogatory which is, in reality, an objection to the interrogatory itself, must be made within a reasonable time after the filing of such interrogatory, and is untimely if made at the time of trial.

However, the competency of a witness to testify concerning the contents of books and records kept under his supervision is an expedient developed by the courts to avoid the production of voluminous business data which might otherwise not be readily produced and is in the nature of an exception to the hearsay rule. The extent to which the rule is relaxed is discretionary with the court (see Wigmore on Evidence (3rd ed.) 5 § 1530) which would expect such testimony to be clothed with reasonable guarantees of its accuracy and credibility. It is this latter aspect in which I find the deposition wanting, since the witness himself, in his answers to interrogatories 6 through 9, has undermined his own qualifications by making clear that he lacks any detailed knowledge of the facts about which he is testifying.

It seems to me that the cases relied upon by the majority furnish no support for the proposition that, in the facts of the case at bar, the court should exercise its discretion to admit the testimony of this particular witness. In each of those cases, the witness established a relationship to, or a knowledge of, the books and records in question far in excess of that shown by the witness here.

In American Express Company v. United States, 30 Cust.Ct. 333, Abstract 57048, the court found that a witness was qualified to testify about the contents of his company's records where it appeared that such records were kept under his *direct* supervision, under circumstances which revealed that he was the grandson of the founder of the business, had been associated with the firm for more than 30 years, had been a partner for about 10 years, and for a period of 7 years prior to his deposition was the sole owner and manager of the company.

In United States v. Mortimer, 2 Cir., 118 F.2d 266, it was held that charts summarizing voluminous records, prepared for trial by the witness, an experienced public accountant, assisted by several aids, were admissible, and that the testimony of the witness alone, who had supervised the entire project, and on whose direction the authenticity of the whole depended, was sufficient to establish the evidentiary value of such charts.

The court, in Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co., 2 Cir., 18 F.2d 934, admitted a tabulation made by the witness, when the only facts not within her own personal knowledge were drawn from records made in the regular course of business and kept in files often used by the witness, and held that there was no necessity to call the clerks who had made the individual notations.

Where business records were produced in court by a company's chief export clerk, in whose office and under whose supervision the records were made and kept, who had made some of the entries himself, although most were made by clerks under his supervision, some of whose handwriting the witness could identify, the court, in the case of E. I. Du Pont de Nemours & Co. v. Tomlinson, 4 Cir., 296 F. 634, held such records admissible on the basis of this testimony and did not require the production of every person who had made an entry.

A similar result was reached in the case of Northern Pacific Ry. Co. v. Keyes, C.C., 91 F. 47, where about 50 clerks had been employed in the preparation of the tables presented in evidence. The court found testimony by the heads of departments under whose immediate supervision the work had been done sufficient to render the evidence competent.

In the instant case, the answers of the witness to interrogatories 6 through 9 show that he did not have the requisite personal knowledge, or the *direct* supervisory position, or the wide scope of experience with regard to the records to bring him within the holdings of any of these cases. He admitted that he had no detailed knowledge of the shipments in issue or of the manufacture of the merchandise, because of the vast extent of the company's operations, and although he stated that the records were kept under his supervision, he added that they were not kept by him personally.

It is by reason of those answers that I would hold the objection to the answers to interrogatories 10 and 11 to be timely. Whereas the general principle that supervisors are competent to testify concerning books and records kept under their jurisdiction would normally operate to render untimely objections made at the trial to answers in response to questions purporting to elicit such information, as being in effect objections to the questions, where, as here, answers to questions previously posed reveal a weakening of qualifications to support the answers objected to, a different situation obtains. That the answers given to interrogatories 6 through 9 by the witness himself would make clear that he did not possess the necessary qualifications to bring his answers to interrogatories 10 and 11 within the exception to the hearsay rule herein above adverted to could not be divined before such answers were made.

Accordingly, it was not until the commission was returned and the answers were read in court that a proper basis of objection was indicated, and when that objection was made, it should have been sustained.

For the foregoing reasons, I would grant defendant's motion to strike the answers to interrogatories 10 and 11, the effect of which action, of course, would be to strike from the record all evidence relevant to the issue of component material of chief value. Since, however, plaintiff would not have been apprised of defendant's motion until the time of trial, I believe that the interests of justice would best be served in this case by restoring it to the calendar for additional evidence on this phase of the case.