STANDARD BRANDS PAINT CO., INC.

v.

UNITED STATES.

C. D. 4477; Court No. 72-4-00772.

United States Customs Court.
Oct. 24, 1973.

Glad, Tuttle & White, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen. (Gilbert Lee Sandler, New York City, trial atty.), for defendant.

WATSON, Judge:

This civil action raises in a somewhat novel manner the question of "entireties". The central dispute is whether the importations are to be considered for tariff purposes as separate parts or in some more unified form. The importations consist of separate packages of wooden picture frame moldings in a range of styles and lengths. Each package contains two equal lengths of molding with their ends mitered (cut at an angle for joining purposes) and two nails. They were classified as wood moldings pursuant to item 202.66 of the Tariff Schedules of the United States, as modified by T.D. 68–9, and were assessed with duty at the rate of 17, 11.5, or 10 per centum ad valorem, depending on the date of entry.

Plaintiff claims the importations should have been classified as picture and mirror frames of wood, pursuant to item 206.60 of the Tariff Schedules of the United States, as modified, and assessed with duty at the rate of 12, 8, or 7 per centum ad valorem, again depending on the date of entry.

There are no real issues of fact in this case. The record establishes that the importations are, as a group, sufficient to form a specific number of frames of each molding pattern. They are packaged and sold in separate packages. Each package contains two equal lengths of molding and two nails so as to give the purchaser the opportunity to construct a frame of the desired dimensions by buying one package of each dimension and nailing the moldings together at the corners.

The tariff provision claimed by plaintiff covers only frames and has no provision for parts of frames. Accordingly, to gain classification thereunder, an importation must consist of an entire frame. Anything less, no matter how strong its dedication to use as a frame or how advanced its condition, is at most only a part of a frame for which item 206.60 does not provide. See, United States v. Schoverling, 146 U.S. 76, 81, 82, 13 S.Ct. 24, 36 L.Ed. 893 (1892). See also, United States Industrial Products Corp. v. United States, 60 Cust.Ct. 618, 627, C.D. 3476, 286 F.Supp. 583 (1968). Cf. United States v. Baldt Anchor, Chain & Forge Division of The Boston Metals Co., Albert Maurer Company, 59 CCPA 122, C.A.D. 1051 (1972); Authentic Furniture Products, Inc. v. United States, 68 Cust.Ct. 204, C.D. 4362, 343 F.Supp. 1372 (1972) (appeal pending).

Plaintiff argues that the importations, despite their being packaged and sold as described earlier, are imported in a quantity sufficient to form a specific number of frames, are ultimately used as frames and therefore deserve tariff treatment as unassembled frames.

The doctrine which plaintiff seeks to apply is known as the doctrine of entireties. Under this doctrine it has long been established that an article which is imported in a disassembled or unassembled manner is nevertheless dutiable as an entirety. More than 75 years ago the Second Circuit Court of Appeals ruled as follows in United States v. Irwin, 78 F. 799, 802 (1897):

* * * [A breech-loading shotgun] is no less one notwithstanding the parts have never been assembled, provided they have been made so as to be attachable and detachable without requiring any adjustment. The Schoverling Case [an importation of gunstocks] does not decide that when the stocks and corresponding barrels are imported together, shipped by the

same vessel for the same importer, and entered at the customhouse at the same time, duty is to be assessed upon the fragmentary parts. Under such circumstances, we think the parts are dutiable as a whole. * * *

Almost 50 years ago the Court of Customs Appeals stated as follows in Altman & Co. v. United States, 13 Ct.Cust. App. 315, 318, T.D. 41232 (1925); a case involving a single shipment of corsets and lace trimming packed separately and customarily sewn together for sale:

* * * [I]f an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

■ The principle expressed in the *Altman* case has stood the test of time. It would be enough to distinguish the present case to point out that there has been no showing here the importer intends to use the imported parts as entire articles, in fact the opposite is the case; he intends to pass them on to the purchaser in the imported state. Such a distinction, though valid, might engender an undue emphasis on the word "use", making it seem that the importer must intend to join the disparate parts. However, whether the importer joins the parts himself or passes them on in a form which invites their assembly by someone more remote in the chain of commercial transactions, an entirety may exist. Since it seems clear that an importer may import and sell an unassembled article, I think it would be more accurate to demand of him an intent to "treat" the parts as a complete article of commerce. With this small gloss I would read the considerations outlined in the *Altman* case as applying with rea-

sonable accuracy in this case. Here there is no entire article being imported because the importer fails to treat the importations as entire articles.

■ Even the above, however, is not the most exact or basic expression of the weakness in plaintiff's position. It is less a failure on the part of the importer than the intentional and unavoidable consequence of the design and packaging of the importations. In all cases involving importations of unassembled components found to be importations of entire articles, *had it been desired, the entire article could have been assembled at the time of importation in the form it would ultimately take.* This is so basic a test, it is often unstated or unemphasized. In the venerable case of United States v. Irwin, *supra,* the court stated at page 803 of 78 F. as follows:

* * * [The customs officers] must take the articles as they find them to be upon examination. If they cannot, by assembling them together, discover that they are really a different thing, it is their duty to classify them as the article they purport to be.

In that case the test of assembly was mentioned as a way to find out whether the imported article was something other than what it appeared to be. It should certainly follow that this test may be used to answer the even more basic question of whether an imported article exists at all.

■■ If an entire article is claimed to exist it must be capable of constitution at the time of importation. This is a simple corollary of the well established principle that classification of imported articles is determined by the condition of the article at the time of importation. United States v. Schoverling, *supra.* An irreducible element of an article's condition at the time of importation is its existence as a distinct, identifiable and predictable article.

■ Although the instant importations are undoubtedly destined for use in making frames, the frames they will

ultimately form cannot be constructed from the imported material at the time of importation. The exact configuration of an individual frame must await the consumer's selection of two of the numerous possible combinations. Since the frame only comes into existence as an entirety after the consumer has purchased and assembled the component parts, it simply does not exist at the time of importation. In other words, components which have no predictable relationship with each other at the time of importation cannot be entire articles. By predictable, I mean either that one identifiable component is intended for use with another identifiable component, or more generally, that each component of a single given type or size is intended for use with a component of another type or size. Thus, the situation in which an equal number of paper birds and bamboo sticks are imported with the intention of attaching each bird to a stick represents the minimal predictable relationship necessary for the existence of entireties. See Gellman Brothers v. United States, 2 Cust.Ct. 37, C.D. 82 (1939). See also C. J. Tower & Sons v. United States, 26 Cust.Ct. 272, C.D. 1334 (1951), aff'd, 40 CCPA 30, C.A.D. 493 (1952).

Here, the most that can be said about the importations is that a given component will be used with another component. The mere abstract mathematical prediction that a certain number of frames can be produced is insufficient if the dimensions of the frames cannot be known at the time of importation.

█ The intention of this method of packaging and sale is to leave the determination of dimensions of the frames and their formation to the consumer. An importation of components, which is made with the specific intention of leaving the variables in the formation of an article for determination at a later stage, is not the importation of entire articles. In fact, the commercial method used here is directly at variance with the existence of entire articles since, as with any flexible modular system, it is interested in the offering of numerous potential articles not a single actual article. In short, components whose design, packaging and method of sale are intended to offer numerous possible formations, one with the other, cannot obtain tariff treatment as entire articles at the time of importation.

In light of the above, plaintiff's claim for classification of the importations as frames pursuant to item 206.60 has no merit. In addition, plaintiff has failed to demonstrate any error in the classification of the importations as moldings pursuant to item 202.66. The provision for moldings encompasses moldings dedicated for use as frames. See Border Brokerage Company, Inc. v. United States, 63 Cust.Ct. 243, C.D. 3903 (1969). See also, Bendix Manufacturing Co. v. United States, 28 Cust.Ct. 144, C.D. 1401 (1952).

Judgment will issue accordingly.