## ALTMAN & Co. *v.* UNITED STATES (No. 2624)[1]

ENTIRETIES—CORSETS AND TRIMMINGS.

If an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and intends to so use them, such parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though they may have a commercial value and be salable separately. Corsets were shipped, each pair in a box and the boxes in cases. Each box was marked with the number and size of the corset in it. Within the case, in separate packages, was an equal number of made-up lace trimmings, designed to attach to the corsets each marked with a number and size to correspond to those of one of the corsets. Also, within each case was the same number of ribbon bows. It was shown that, usually, the trimmings were attached to the corsets before sale, but that sometimes they and the corsets were sold separately. The goods are entireties.

United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, G. A. 8996 (T. D. 40899)

[Affirmed.]

*Marlow & Hines* for appellants.
*William W. Hoppin*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.

[Oral argument Oct. 15, 1925, by Mr. Hines and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

B. Altman & Co. imported, in 1923, certain merchandise which they entered as cotton wearing apparel. The consular invoice described the merchandise as "Untrimmed cotton corsets" and "Lace trimmings." The collector returned the goods for duty under paragraph 1430 of the Tariff Act of 1922, at 75 per centum ad valorem. In answer to the protest thereafter filed by the importers, the appraiser reported as follows:

The merchandise marked "A" consists of corsets and lace trimmings for same packed in the same case. It was returned for duty as entireties at 75 per centum, paragraph 1430. It should have been returned as cotton-lace wearing apparel at 90 per centum, paragraph 1430, act of 1922 as amended.

The Board of General Appraisers, on appeal, overruled the protest and held the goods to be classifiable as entireties and dutiable at 90 per centum ad valorem under the provisions of said paragraph 1430. From that judgment the importers appeal.

The official sample in the case shows, together with the testimony in the case and the admissions of the parties, that the goods involved

---

[1] T. D. 41232.

are corsets and lace trimmings. Each corset is separately inclosed in a pasteboard box of the size required to contain it, and which box has printed upon its top the name and address of the importer, and upon one end the name: "The Fasso," together with the number and size of the particular corset. The corset consists of two pieces, fitted with clasps, or fasteners, and eyelets for laces, although no laces accompany the corset. These boxes with their inclosed corsets were shipped, and received by the importers, in cases. In these cases, but in separate packages, were an equal number of folded pieces of lace, each about 4 feet in length and 3 inches in width, scalloped on one edge and having a narrow pink-satin ribbon ruffle on the other edge, which lace is basted upon a backing of buckram. There is pinned to each piece of lace a label with words and figures indicating a number and size corresponding to some corset in the case. There is also inclosed in each case a number of small, made-up bows of pink-satin ribbon, equal to the number of corsets in said case.

The corsets are made of cotton, in no part knitted. Terence A. Clancy, an employee of importers for 40 years, testified that the corsets and lace trimmings were salable separately; that the appellants import the merchandise in question, attach or sew the trimmings to the corset and thus sell them to the trade, but not at retail; that on some occasions they have sewed these trimmings to corsets, but have afterwards removed them and substituted different trimmings; but that the customary way of selling the corsets in question is with the trimmings aforesaid sewed and attached to them.

It is manifest, from a consideration of these facts, that these goods were imported for the purpose of making therefrom a finished and completed article of commerce; that the various parts were designed to be used together and not separately, and that this was, in fact, the actual major use which was made of them by the importers.

The importers claim the trimmings and corsets should be treated as separable, for tariff purposes; that the corsets are properly dutiable at 45 per centum as knitted cotton wearing apparel, under paragraph 917 of the tariff act of 1922, or at 35 per centum under paragraph 919, as cotton wearing apparel, or at 40 per centum as manufactures of cotton, under paragraph 921, or under paragraphs 1459 or 1460, and the lace trimming at 75 per centum under paragraph 1430. The Government maintains the corsets and trimmings should be treated as entireties. This is the only question involved here.

The matter of the separability of imported goods, for duty purposes, has been before the courts many times. A brief review of the authorities may be helpful here.

The first, and doubtless the leading case, on the subject is *United States* v. *Schoverling*, 146 U. S. 76. There, gun stocks were imported

which were intended to be joined with gun barrels to be imported at some other time. The collector returned them as guns. The Supreme Court held this classification to be improper and that the stocks were dutiable as imported. Following this case, in *United States* v. *Irwin*, 78 Fed. 799, the Circuit Court of Appeals, Second Circuit, held that gun stocks, gun barrels, and other parts of complete guns, shipped on the same vessel, but in separate packages, were dutiable as guns. In *Isaac* v. *Jonas*, 148 U. S. 652, cigarette papers and pasteboard covers, designed to be made into small books, were held to be entireties. *In re Crowley*, 55 Fed. 283, was a case dealing with the dutiability of certain woolen dress patterns, imported in pieces, one piece trimmed with lace. The court of appeals said:

Each article was an entirety, and constituted one dress pattern, and should have been assessed for duty accordingly, by the board of general appraisers, at the rate named in the protest; * * *

In T. D. 27741, the Board of General Appraisers held certain pieces of wood, designed for making complete reels, but shipped in a knocked-down condition, to be dutiable as reels. In T. D. 28622, shirt waists were involved. Each shirt waist consisted of several pieces of embroidered and one piece of plain cloth, and was packed in a separate box. The importer claimed the plain piece should be separately assessed for duty as such. The board held the waists should be assessed as entireties. In *United States* v. *Leigh*, 159 Fed. 314, certain carding machines and some card clothing, each made by different manufacturers, and packed separately, but designed to be used together and ordered and shipped at the same time, were held to be entireties for duty purposes. *United States* v. *Auto Import Co.*, 168 Fed. 242, concerned an importation of crated, knocked-down automobiles. Four wheels were inclosed, which it was shown might or might not be used with the machine. The automobiles were held to be entireties. This court held, in *Knauth* v. *United States*, 1 Ct. Cust. Appls. 422, that flat cardboards of various sizes and shapes, intended to be put together to form wall pockets, etc., should be considered as entireties. To a like effect was *Jackson Co.* v. *United States*, 2 Ct. Cust. Appls. 475, where this court held certain cast iron linings for mantels and fireplaces, being designed to be used together as a complete whole, were dutiable as entireties.

Our attention, however, is challenged to the following cases, which, it is claimed, sustain the contention of the importers here: *United States* v. *Waterhouse*, 1 Ct. Cust. Appls. 353, dealt with a shipment of coal, in which slack was commingled. The slack was held separable for tariff purposes, although commingled. It will be observed, however, that each kind of coal involved bore a different rate of duty, and was in no way essential to the other, and that the

amount of duty was to be fixed by weight. In *Denike* v. *United States*, 5 Ct. Cust. Appls. 364, wheels and axles made in the United States, but with tires made in Germany, were held to be separable, because of the manifest intent of Congress to favor and foster the manufactures of the United States. In *United States* v. *Amendola*, 5 Ct. Cust. Appls. 516, certain nuts adhering to pine cones were held separable; the underlying reason for that decision was that, the duty being regulated by weight, only the nuts should be weighed and be dutiable. In *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, flaxseed and screenings, commingled, were held separable; in this respect, the case followed *United States* v. *Waterhouse, supra.* *United States* v. *Borgfeldt*, 7 Ct. Cust. Appls. 367, dealt with an importation of certain metal pencil holders, with lead pencils attached; they were held separable; that decision, however, rested entirely upon a long established legislative, administrative, and judicial construction rating the parts of such combinations separately for dutiable purposes.

Importers rely strongly upon *United States* v. *Myers & Co.*, 11 Ct. Cust. Appls. 409, and Abstract 49970. In the former case, the court held that carcasses of calves, imported with the skins on, were separable from the skins. The reason for that decision is apparent when it is remembered that the duty fixed upon calves' meat at that time was to be ascertained by weight, while skins were free of duty. In Abstract 49970, shoes, with skates riveted thereto, were held separable. We have not the record in that matter before us and hence can not tell what the particular facts were which were shown therein. In any event, the case is not analagous to the case at bar.

A consideration of these pronouncements of the courts leads to the conclusion that if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

Testing the facts in the case at bar by the law, as thus stated, it is manifest that the goods imported here should be treated as entireties, for tariff purposes. The judgment of the Board of General Appraisers is therefore *affirmed*.