(C. D. 1726)

M. H. GARVEY CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 29, 1955)

*Henry L. Ziegel* for the plaintiff.
*Geo. Stephen Leonard*, Acting Assistant Attorney General (*Richard M. Kozinn*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This protest relates to certain merchandise which, at the time of importation, was the property of a deceased American citizen. It was originally entered for warehouse and, later, was purchased in bond from the estate by a firm that applied for manipulation of certain items of jewelry. Manipulation of imported merchandise is granted under the provisions of section 562 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, which, so far as pertinent, reads as follows:

> Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than one ton weight. * * * *Provided*, That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for * * * consumption upon payment of the duties accruing thereon, *in its condition and quantity, and at its weight, at the time of withdrawal from warehouse*, with such additions to or deductions from the final appraised value as may be necessary by reason of change in conditions. [Italics supplied.]

Customs regulations, issued pursuant to the foregoing statutory provisions and so far as they are involved herein, read as follows:

**19.11** [Customs Regulations of 1943] **Manipulation in bonded warehouses and elsewhere.**

(*a*)  So far as applicable, the general provisions of the regulations governing warehouses bonded for the storage of imported merchandise shall apply to bonded manipulation warehouses and to other designated places of manipulation.

\*         \*         \*         \*         \*         \*         \*

(*d*)  The application to manipulate, which shall be filed in duplicate on customs Form 3499 with the collector having jurisdiction of the warehouse or other designated place of manipulation, shall describe the contemplated manipulation in sufficient detail to enable the collector to determine whether the imported merchandise is to be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, within the meaning of section 562, Tariff Act of 1930, as amended.  If the collector is satisfied that the merchandise is to be so manipulated, he may issue a permit on customs Form 3499, making any necessary modification in such form.  Manipulation resulting in a change in condition of the merchandise, which will make it subject to a lower rate of duty or free of duty upon withdrawal for consumption, is not precluded by the provisions of such section 562; but *if the manipulation produces two or more parts of an article constituting an entirety, the parts shall not be classified separately if all the parts constituting the entirety are withdrawn for consumption under a single withdrawal.*  [Italics supplied.]

The process of manipulation and the subsequent procedure followed, releasing the merchandise from customs custody, are the subject of stipulated facts entered into during the course of the trial and reading as follows (R. 2–3):

Mr. ZIEGEL:  \* \* \* I offer to stipulate with the Government as follows:

Application was duly made under section 562, Tariff Act of 1930, to manipulate certain items as specified in said application, Customs Form 3499, by removing certain precious and semi-precious stones from their respective settings.  Official permission was granted to so manipulate and the manipulation was performed in the presence and under the supervision of the proper customs officers.  At the conclusion of the manipulation, the merchandise was repacked (in the Appraiser's Stores) into three packages: (1) the jewelry and articles not manipulated; (2) the precious and semi-precious stones taken out of their respective settings, and (3) the settings from which said stones were removed.  The appraiser made his report of the manipulation, and also reported his advisory classification of the items in their condition after manipulation.

Thereafter, all of the merchandise covered by the instant warehouse entry was withdrawn for consumption and duties paid thereon by means of a single withdrawal entry.

Mr. KOZINN:  The Government so stipulates.

The collector classified the items in question as entireties and assessed them with duty as jewelry under paragraph 1527 (a) of the Tariff Act of 1930, as amended by T. D. 52739.  It appears from statements made by counsel for defendant at the time of trial and also in his brief that the collector's action, assessing the items in question as entireties, was based on the fact that the manipulated merchandise was withdrawn for consumption and duties paid thereon by means of a single withdrawal entry.

Plaintiff claims that the manipulated merchandise is properly classifiable as separate entities, the settings as parts of jewelry under paragraph 1527 (a), as amended, *supra*, and the precious stones and semiprecious stones under paragraph 1528 of the Tariff Act of 1930, either as originally enacted or as amended, at the rates and upon the basis of the values set forth in the "APPLICATION AND PERMIT TO MANIPULATE, EXAMINE, SAMPLE OR TRANSFER GOODS IN CUSTOMS CUSTODY" (plaintiff's collective exhibit 1). In making such claims for duty assessment, plaintiff attacks the validity of the customs regulations, *supra*, and alleges, as stated in its protest, that the articles in question "are properly dutiable at only the appropriate rates of duty accruing thereon in their manipulated condition at the time of withdrawal from warehouse in accordance with the provisions of said Section 562, as amended." Counsel at the time of trial stated plaintiff's contention as follows (R. 4):

The language of this regulation suggests an administrative concept that will hold manipulated articles to be entireties if they were such before manipulation simply because they are withdrawn from warehouse in one withdrawal entry, one paper transaction instead of two or possibly more.

We contend that section 562 determines the basis for assessment of duties on manipulated merchandise and that the procedural conditions sought to be imposed by said regulation is beyond the law and is itself unlawful.

Plaintiff introduced the testimony of the president of J. & S. S. DeYoung, Inc., "buyers of precious stones and jewels, diamonds, mainly for the wholesale market" (R. 8), that purchased the merchandise in question and arranged for its manipulation under customs supervision. The witness described the said corporation's business as follows (R. 9):

\* \* \* we are purchasers and appraisers for most of the important retail stores and banks and law firms throughout the United States. And particularly in the latter years since I have been with the firm we have been buying estate merchandise when someone passes away and there is jewelry in the estate to be liquidated. We are usually called in the picture by some attorney or some of the better jewelers to make appraisals and also bids on the purchase of the jewelry that would be left in the estate that is not directly sold to any individual.

The witness testified that he has been in the business for 40 years, during which period he has been a wholesale jeweler and also acted as consultant for "leading law firms and leading retail jewelers." The witness' testimony concerning the merchandise in question establishes that none of the items was restored to its original condition as an entirety. In some instances, the stone was sold and "the setting went along with the sale of it to show that it was an estate piece." The witness explained the procedure as follows (R. 16):

\* \* \* We have a lot of customers who are rather anxious to have merchandise bought from an estate so they can show their customer that this is an item bought

from an estate purchase. And whether or not it makes them feel they are getting better value or what, I don't know, but they feel they like to have the rest of the setting with the stones, sometimes, to show the customer. And even though they don't reset the opal back in the same setting, they perhaps dispose of it as we do, melt them or break them up for other materials, at least it shows that it originally came from an estate, it was not a new importation.

In other instances, the stone was sold and the setting melted. The witness referred to invoice item 21 to explain such a disposition of some of the merchandise in question. His testimony on the point is as follows (R. 17):

> No. 21 was a diamond that was sort of a ball-shaped diamond on a scarf pin with a pearl at the bottom. We took the diamond and split it in halves, we call it cleave it, and we made two separate diamonds of that ball-shaped diamond. We have since sold both the diamonds, but we have the pearl in stock. And the scarf pin has been melted. When we say "melted," it's been sent to the Federal Government in our gold melting of oddments that we send every several months.

Another category of items comprises those of which the stone either has been processed and sold, or held in stock, and the setting, also, has been retained. One of such settings that was retained by the witness (invoice item 122) was received in evidence (plaintiff's illustrative exhibit 4). Some of the settings were used to mount semi-precious stones other than the ones originally used. In manipulating the cuff links (invoice item 107), the settings were sawed in the custom-house to allow removal of the stones, without causing any damage thereto. The mounting in that item was melted. The witness identified a list of the items in question, which shows the disposition of the stone and the setting covered by each item number (plaintiff's illustrative exhibit 3).

The provision permitting manipulation of imported merchandise was originally enacted in section 562 of the Tariff Act of 1922. Customs regulations issued pursuant thereto (Customs Regulations of 1923 (article 829 (8)), as amended by 48 Treas. Dec. 65, T. D. 41038), provided, in part, as follows:

### 4. WITHDRAWAL

\*        \*        \*        \*        \*        \*        \*

*(b)   For consumption—Appraisement.* \* \* \*

Upon withdrawal of manipulated merchandise for consumption, if the value or classification has been changed by the manipulation, the collector will cause an appraisement thereof to be made and such merchandise will be classified and duties assessed in accordance with its value and condition at the time of withdrawal, \* \* \*.

No further change was made until the Customs Regulations of 1937 were issued. Article 944 (*a*) thereof contained the following provision:

> \* \* \* Where safety or preservation of the merchandise is not involved, manipulation can not be allowed under section 562 of the Tariff Act of 1930 merely for the purpose of obtaining a lower rate of duty; that is, if the merchandise after manipulation would be treated as an entirety if imported in the manipulated condition.

An amendment to the foregoing language changed the provision to read as follows (72 Treas. Dec. 746, T. D. 49295):

\* \* \* Manipulation resulting in a change in condition of the merchandise which will make it subject to a lower rate of duty or free of duty upon withdrawal for consumption is not precluded by the provisions of section 562; but if the manipulation produces two or more parts of an article constituting an entirety, the parts shall not be classified separately and duty shall be assessed on the entirety as such.

The Customs Regulations of 1943 (sec. 19.11), *supra*, included, for the first time, the requirement to assess manipulated merchandise as an entirety when "withdrawn for consumption under a single withdrawal."

The significance herein of the foregoing review of pertinent customs regulations lies in the showing that classification of ʼmanipulated merchandise was always controlled by its condition at the time of withdrawal for consumption, until promulgation of the current regulations (sec. 19.11, *supra*), which attempt to fix classification of merchandise as an entirety, by administrative procedure, and without regard for, or consideration of, the condition of the merchandise "at the time of withdrawal from warehouse," as provided by the statute, section 562, as amended, *supra*. The said regulations virtually ignore the work involved in the process of manipulation and the consequent change in statutory identity with a new dutiable status acquired by the merchandise. Their effect is to repose in the collector excessive authority, not contemplated by the clear and unambiguous language of the statute, amended section 562, *supra*. The conclusion finds support in the cases of *United States* v. *Younglove Grocery Co.*, 5 Ct. Cust. Appls. 377, T. D. 34873, and *Saji & Kariya Co. et al.* v. *United States*, 9 Ct. Cust. Appls. 78, T. D. 37945.

In the *Younglove Grocery Co.* case, *supra*, the court had under consideration customs regulations (20 Treas. Dec. 1340, T. D. 31711) that allowed a 1 per centum tolerance to be used in determining 5-gallon tins of olive oil. The statute did not provide for any tolerance. In holding the regulations to be invalid, the appellate court said:

\* \* \* This regulation, therefore, if enforced, would not result in giving effect to the terms of the statute as enacted, but to the contrary it would alter or amend the same. No special authority for this action by the department appears in the act, and it seems clear that such authority is not within the general powers of the department. The line of demarkation between the two rates of duty was unconditionally fixed by the terms of the act, and only legislative authority can either raise or lower the same. The regulation of June 20, 1911, is therefore held to be invalid.

The *Saji & Kariya Co. et al.* case, *supra*, involved a customs regulation (32 Treas. Dec. 402, T. D. 37126) that sought to fix a certain percentage of plating on an exposed surface as being sufficient to

classify an article as "plated," within the meaning of the term as used in the statute. In that case, a rather unusual situation developed because the collector did not follow the regulation, while the importer sought to have it enforced. The appellate court sustained the collector's action, and, in revoking the regulation under consideration, said:

It will readily be seen that this aspect of the case presents a somewhat unusual question, since plainly enough the present assessment violates the instructions of the secretary fixing 15 per cent of an article's surface as the minimum measure of plating required in order to constitute it a plated article under the provision in question.

We are of the opinion, however, as appears above, that the instructions thus issued by the department were erroneous, and that in effect they sought to engraft upon the statute a term or limitation which was not placed there by Congress. This of course the department had no authority to do. Morrill *v.* Jones (106 U. S., 466).

The reasoning followed in each of the cited cases has equal application, with the same force and effect, in this case. To require the importer of the articles in question to pay duties thereon under the doctrine of entireties, solely because the merchandise was "withdrawn for consumption under a single withdrawal" (Customs Regulations of 1943, sec. 19.11, *supra*), "would not result in giving effect to the terms of the statute as enacted, but to the contrary it would alter or amend the same," the *Younglove Grocery Co.* case, *supra*. To sanction the procedure to be invoked by the said regulations would "engraft upon the statute a term or limitation which was not placed there by Congress," *Saji & Kariya Co. et al.* case, *supra*.

The case of *John S. Phipps* v. *United States* (22 C. C. P. A. 595, T. D. 47601), is worthy of mention. In that case, the merchandise consisted of a diamond and emerald necklace which was manipulated, pursuant to the provisions of section 562 of the Tariff Act of 1930, "by removing the precious stones therefrom." The appellate court's comment on the process of manipulation is as follows:

* * * As a result of this action the necklace, which in its imported condition was subject to classification for duty as jewelry, was advisorily returned as precious stones and a mounting, the precious stones being appraised at $21,000, as shown by red ink notations upon a memorandum in evidence attached to the baggage declaration, and the mounting as jewelry valued at $20. The appraiser's red ink notations further show that he described the precious stones as dutiable at 10 per centum, and the mounting at 80 per centum. The record fairly indicates that, had this manipulation and segregation of the precious stones not been permitted, appellant would have returned the necklace to the seller in England rather than pay duty upon the value thereof as jewelry at the rate of 80 per centum ad valorem.

The pertinency of the foregoing quotation to the present case is in the observation that, while the court recognized therein that the imported

entity, i. e., a necklace, was manipulated and its components segregated, nothing was stated to suggest any kind of support for the collector's action herein.

For all of the reasons hereinabove set forth, we hold to be invalid the customs regulations in controversy, particularly so far as they attempt to fix a tariff classification as entireties on manipulated articles that "are withdrawn for consumption under a single withdrawal." Accordingly, we overrule the collector's action, classifying the items in question as entireties, pursuant to the said regulations.

Counsel for defendant, arguing for classification of the present merchandise as entireties, states, in his brief, that:

> * * * Any merchandise, as this, if imported in the same shipment on the same boat, and entered for consumption together, would clearly be dutiable as an entirety.

The above-quoted statement is without foundation in law. What we stated in the case of *Artgift Corp.* v. *United States*, 30 Cust. Ct. 372, Abstract 57135, which involved the principle of entireties, can be repeated here:

> The question of entireties has been the subject of much litigation both in this court and the Court of Customs and Patent Appeals. The complexities of the different situations that have been encountered and the wide variety of facts associated therewith have prevented the courts from enunciating any definite rule which could be a positive guide, under all circumstances, for the classification of merchandise as an entirety.

In the present case, plaintiff's uncontradicted testimony elicited from a highly qualified witness, as hereinabove outlined, definitely shows that the manipulation of the items in question produced separate and distinct commercial entities, i. e., precious or semiprecious stones and settings. The record herein discloses further that the importer of the merchandise in question never intended and never actually did join or fit the stones into the discarded settings. Under such circumstances, the imported items are not dutiable as entireties. *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232. In accordance with the specific provisions of the statute, section 562, as amended, *supra*, which requires that the duties on manipulated merchandise shall accrue thereon, in its condition, "at the time of withdrawal from warehouse," we hold the imported articles to be properly classifiable as separate entities; the settings as parts of jewelry under paragraph 1527 (a), as amended, *supra*, and the precious stones and semiprecious stones under paragraph 1528 of the Tariff Act of 1930, either as originally enacted or as amended, at the rates and upon the basis of the values set forth in the "Application and Permit To Manipulate, Examine, Sample or Transfer Goods in Customs Custody" (collective exhibit 1, *supra*), as claimed by plaintiff.

The protest is sustained and judgment will be rendered accordingly.