(C.D. 3903)

BORDER BROKERAGE COMPANY, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided October 20, 1969)

*Glad & Tuttle* (*George R. Tuttle, Jr.,* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Dominick M. Minerva, Robert T. Richardson,* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before WATSON, MALETZ and RE, Judges

RE, Judge: This case presents for the court's determination the proper classification, for customs duty purposes, of two importations of wood moldings from Canada.

Upon entry at the port of Blaine, Washington, the merchandise was classified within the purview of item 202.66 of the Tariff Schedules of the United States which provides for wood moldings, and wood carvings and ornaments suitable for architectural or furniture decora-

tion, whether or not drilled or treated, other than standard wood moldings not drilled or treated. Duty thereon was therefore at the rate of 17 per centum ad valorem.

The claim relied upon by plaintiff, which was made by an amendment to its protest, is that the instant merchandise should properly have been classified as standard wood moldings, not drilled or treated, within item 202.63 of the tariff schedules, for which duty is provided at the rate of 1.5 per centum ad valorem.

The following are the pertinent statutory provisions:

Tariff Schedules of the United States, Schedule 2, Part 1, Subpart B — Lumber, Flooring, and Moldings:

> "Subpart B headnotes:
>
> \* \* \* \* \* \* \*
>
> 2. For the purposes of this part, the following terms have the meaning hereby assigned to them:
>
> \* \* \* \* \* \* \*
>
> (e) Standard wood moldings: Wood moldings worked to a pattern and having the same profile in cross section throughout their length.
>
> \* \* \* \* \* \* \*
>
> Wood moldings, and wood carvings and ornaments suitable for architectural or furniture decoration, whether or not drilled or treated:

| | | |
|---|---|---|
| 202.63 | Standard wood moldings, not drilled or treated_____ | 1.5% ad val. |
| 202.66 | Other _____ | 17% ad val." |

From the testimony of three well-qualified witnesses who testified at the trial, two appearing for plaintiff and one for the defendant, and from the 13 exhibits received in evidence, the following facts are deduced.

The imported merchandise consists of wood picture frame moldings. It is produced by placing a one-inch square piece of lumber in a molding machine, also known as a "sticker". Through the proper setting of the knives in the heads of the sticker, the piece of lumber is cut to the desired cross sectional pattern or configuration in one operation. The resulting molding is graded, defects are excised, and the remainder of the molding is cut into commercial lengths of 3 to 6 feet. The pieces are then made up into 50-foot bundles, a typical bundle being represented by exhibit 1. It is in this, "in the white", condition that the instant merchandise is purchased and sold for use in the making of picture frames.

"Rabbeting" of the moldings, which is a cutting out of the underside

of the molding to accommodate ultimately the insertion of a picture, is included in the original molding pattern. This is done as part of the sole operation of passing the piece of lumber through the molding machine or sticker.

All three witnesses were in agreement that the imported merchandise consisted of wood moldings worked to a pattern and having the same profile in cross section throughout their length. The only difference among them was that the defendant's witness considered the imported moldings to be special moldings rather than standard moldings inasmuch as they were made for a specific purpose, namely for use in making picture frames.

As representative of picture frame moldings which had been advanced from the state of molding in the raw, exhibit 8 was received in evidence to illustrate a molding which had been subjected to an embossing process to produce its decorative effect. Exhibit 9 was received as illustrative of a hand carved picture frame molding.

Defendant contends that plaintiff's claim cannot be sustained for the following reasons:

1. The Tariff Classification Study, Schedule 2, Part 1, page 23, indicates a legislative intent to include picture frame molding in item 202.66 as molding "Other" than "Standard wood molding, not drilled or treated".

2. The merchandise in issue is a special wood molding and not a standard wood molding.

The court will consider these contentions seriatim.

1. The Tariff Classification Study material relied upon by defendant reads as follows:

"Schedule 2, Part 1—Wood and Wood Products

EXPLANATORY NOTES

Item 202.66 covers standard wood moldings, drilled or treated, and all other moldings, *including picture frame moldings, whether or not drilled or treated*. This item would also cover wood carvings and ornaments suitable for architectural or furniture decoration. These articles are presently dutiable under paragraph 412 as 'wood moldings and carvings to be used in architectural and furniture decoration' at the rate of 17 percent ad valorem, and in the 'basket' provision thereof for wood manufactures at the rate of 16⅔ percent. The language 'to be used' in the quoted provision makes it one based on actual use which not only is undesirable for this type of product, but also, when literally applied, imposes burdens on importers and customs officers. In item 202.66, these provisions are combined into one rate description at the rate of 17 percent ad valorem. The wood moldings and carvings presently dutiable under the above-quoted provisions of paragraph 412 consist of

carved, embossed, stamped, or turned wood articles for architectural and furniture decoration." [Emphasis added.]

In a case such as this, where the meaning of the tariff provision invoked is expressed in unequivocal language, there is no need to resort to extrinsic aids in arriving at a determination of the issue presented.

The Tariff Classification Study should not be called upon to create an ambiguity rather than to solve one. Inasmuch as the court is of the opinion that the statutory provision invoked by plaintiff, item 202.63, is free from ambiguity there is no need to resort to the Explanatory Notes contained in the Tariff Classification Study, relied upon by defendant.

Although the Tariff Classification Study has been resorted to in the construction of the meaning of provisions of the tariff schedules (*Rifkin Textiles Corp.* v. *United States*, 54 CCPA 138, C.A.D. 925 (1967)), such recourse is to be taken only in instances where the meaning of the language, as it appears in the tariff schedules, is doubtful or ambiguous, or such a reference is used to corroborate a conclusion reached. *F.L. Smidth & Company* v. *United States*, 56 CCPA 77, C.A.D. 958 (1969). In addition to the clarity of the language in item 202.63 which provides for standard wood moldings, there is also a definition of that term within the confines of the tariff schedules themselves. In schedule 2, part 1, subpart B, there is found the following headnote.

"Schedule 2. - Wood and Paper; Printed Matter

part 1. - Wood And Wood Products

Subpart B. - Lumber, Flooring, and Moldings

Subpart B headnotes:

1. This subpart covers lumber, wood siding, wood flooring, wood moldings, and certain wood carvings and ornaments, including such products when they have been drilled or treated.

2. For the purposes of this part, the following terms have the meanings hereby assigned to them:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(d) Drilled or treated: Drilled at intervals for nails, screws, or bolts, sanded or otherwise surface processed in lieu of, or in addition to, planing or working, or treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints or enamels, but not including anti-stain or other temporary applications mentioned in headnote 4 of this subpart.

(e) Standard wood moldings: Wood moldings worked to a pattern and having the same profile in cross section throughout their length."

Moreover, it is to be noted that the Tariff Classification Study, prepared by the United States Tariff Commission, was published on November 15, 1960, prior to the enactment of the Tariff Classification Act of 1962 (Public Law 87–456, 76 Stat. 72) which became effective on August 31, 1963. The fact that Congress did not except picture frame molding from the provision for standard wood moldings, not drilled or treated, in item 202.63 of the tariff schedules, when such merchandise would otherwise meet the headnote definition for standard wood moldings, supports the conclusion that it did not intend to place picture frame moldings, whether or not drilled or treated, within the purview of "Other" wood moldings covered by item 202.66 as recommended by the Tariff Commission.

The court, therefore, deems the first contention of defendant to be untenable.

2. The contention of defendant that picture frame molding constitutes "special molding", as testified to by defendant's witness, and therefore does not come within the purview for "Standard wood moldings" in item 202.63 is also untenable.

As was stated by the appellate court in *United States* v. *Page N. Goffigon*, 43 CCPA 172, 176, C.A.D. 625 (1956), in construing the meaning to be given to "pumice stone" provided for in paragraph 206 of the Tariff Act of 1930, as modified—

> "The basic rule in determining the intent of Congress is, of course, the language of the statute itself. The paragraph simply says 'Pumice Stone.' If it had been the intention of Congress to distinguish between grades of pumice stone suitable for use as abrasive and those grades which are not, it would have been a simple matter to do so by express language. We note that one rate of duty is provided in paragraph 203 of the 1930 Tariff Act for limestone 'not suitable for use as monumental or building stone,' and another rate is in paragraph 234(c) for limestone 'suitable for use as monumental or building stone.' The failure to employ similar language with respect to pumice stone suggests there was no intention to distinguish between grades of that material on the basis of suitability for particular uses."

The court here is of the opinion that the foregoing rationale, appearing in the *Goffigon* case, also applies to the provision for "Standard wood moldings" presently under consideration. In the light of the meaning to be assigned to the term "Standard wood moldings", as set forth in the headnotes of subpart B, part 1 of schedule 2, and the fact that the provision for standard wood moldings in item 202.63 is without qualification as to the use to which they are to be put, the court is of the opinion that item 202.63 covers all forms of moldings that come within the headnote definition, provided they have not been drilled or treated. If it had been the intention of Congress to except picture frame moldings from the provision for standard wood mold-

ings, it would have been a simple matter to do so by express language.

In view of the fact that the record before the court supports a finding that the merchandise at bar consists of wood moldings worked to a pattern and having the same profile in cross section throughout their length, and that the wood moldings have not been drilled or treated, the plaintiff has overcome the presumption of correctness that attaches to the collector's classification. The court consequently sustains the claim of plaintiff for classification of the merchandise in issue as standard wood moldings, not drilled or treated, in item 202.63 of the Tariff Schedules of the United States, for which duty is provided at the rate of 1.5 per centum ad valorem. All other claims in the protest are overruled.

Judgment will be issued accordingly.