STANDARD BRANDS PAINT CO., INC., Appellant,

v.

The UNITED STATES, Appellee.

Customs Appeal No. 74-20.

United States Court of Customs and Patent Appeals.

March 13, 1975.

---

6. Reg. No. 693,974, issued March 1, 1960.

Robert Glenn White, Los Angeles, Cal. (Glad, Tuttle & White, Los Angeles, Cal.), atty. of record, for appellant.

Carla A. Hills, Asst. Atty. Gen., Andrew P. Vance, Chief Customs Section, Gilbert Lee Sandler, New York City, for United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the judgment of the United States Customs Court, 71 Cust.Ct. 75, C.D. 4477, 366 F.Supp. 507 (1973), overruling appellant's claim for classification and holding that the imported merchandise had been properly classified by the District Director of Customs. We reverse.

The importations consist of separate packages of wooden picture frame moldings of different styles and lengths. Each package contains two nails and two equal lengths of molding which have 45° mitered ends and a pre-drilled hole to accommodate one of the nails for assembly of a frame. An even number of packages of each style is imported so that a known number of frames of each style may be assembled. A prospective purchaser can assemble a frame of his desired dimensions by buying two packages of molding of the desired length and nailing the moldings together at their corners.

The imported merchandise, invoiced as "Wooden Picture Frames," was classified under item 202.66, Tariff Schedules of the United States (TSUS), as wood moldings and assessed with duty at the rates of 17, 11.5, or 10 per centum ad valorem, depending on the date of entry.

Appellant claims that the importations are properly classifiable under item 206.-60 TSUS as picture and mirror frames of wood at 12, 8, or 7 per centum ad valorem, depending on the date of entry. The basis of its claim is that the imported moldings constitute unassembled frames and upon application of the doctrine of entireties such frames should be dutiable as entireties—picture frames of wood.

The involved statutes are:

*Classified under:*

Wood moldings, * * * whether or not drilled or treated:

Standard wood moldings, not drilled or treated:

    *      *      *      *      *      *

202.66   Other

*Claimed under:*

206.60   Picture and mirror frames, of wood

General Headnotes and Rules of Interpretation, TSUS:

10. *General Interpretative Rules.* For the purposes of these schedules—

    *      *      *      *      *      *

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished  .  .  . .

The opinion of the Customs Court first noted that the item under which appellant claims has no provision for parts and therefore classification under that item could be had only for an entire frame. The court opined that anything less than an entire frame is only a part of a frame for which the item claimed under does not provide. In response to appellant's argument pertaining to the doctrine of entireties, the court stated:

Almost 50 years ago the Court of Customs Appeals stated as follows in Altman & Co. v. United States, 13 Ct.

Cust.Appls. 315, 318, T.D. 41232 (1925) * * * *:

* * * [I]f an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

The principle expressed in the *Altman* case has stood the test of time. It would be enough to distinguish the present case to point out that there has been no showing here the importer intends to use the imported parts as entire articles, in fact the opposite is the case; he intends to pass them on to the purchaser in the imported state. Such a distinction, though valid, might engender an undue emphasis on the word "use", making it seem that the importer must intend to join the disparate parts. However, whether the importer joins the parts himself or passes them on in a form which invites their assembly by someone more remote in the chain of commercial transactions, an entirety may exist. Since it seems clear that an importer may import and sell an unassembled article, I think it would be more accurate to demand of him an intent to "treat" the parts as a complete article of commerce. With this small gloss I would read the considerations outlined in the *Altman* case as applying with reasonable accuracy in this case. Here there is no entire article being imported because the importer fails to treat the importations as entire articles.

However, the Customs Court found the "most exact or basic expression of the weakness" in appellant's position to be that the entire article—a picture frame—could not have been assembled at the time of importation in the form it would ultimately take. The court stated:

Although the instant importations are undoubtedly destined for use in making frames, the frames they will ultimately form cannot be constructed from the imported material at the time of importation. The exact configuration of an individual frame must await the consumer's selection of two of the numerous possible combinations. Since the frame only comes into existence as an entirety after the consumer has purchased and assembled the component parts, it simply does not exist at the time of importation. In other words, components which have *no predictable relationship* with each other at the time of importation cannot be entire articles. By predictable, I mean either that one identifiable component is intended for use with another identifiable component or, more generally, that each component of a single given type or size is intended for use with a component of another type or size.

. . .

Here, the most that can be said about the importations is that a given component will be used with another component. The mere abstract mathematical prediction that a certain number of frames can be produced is insufficient if the dimensions of the frames cannot be known at the time of importation. [Emphasis added.]

The Customs Court further found that the appellant had failed to prove any error in the classification under item 202.66 insofar as that provision encompasses moldings dedicated for use as picture frames, citing Border Brokerage Co. v. United States, 63 Cust.Ct. 243, C.D. 3903 (1969).

### Opinion

■ We do not agree with the Customs Court that the principle expressed in *Altman,* supra, is not applicable to the facts at bar because of an alleged failure to show an intent to either "use" or "treat" the imported merchandise as

completed articles of commerce. From our examination of the exhibits and testimony, we find it to be manifest that the importer is selling, "using," and/or "treating" the imported merchandise as unassembled picture frames, albeit one-half of each frame is sold in a separate package. Furthermore, *Altman,* supra, makes it clear that separate packaging of parts does not preclude the application of the doctrine of entireties.

The importer has merely given the consumer, when purchasing an unassembled picture frame, the opportunity to choose the *size* of picture frame he desires to assemble. This fact leads us to the basic problem—lack of a predictable relationship between the parts—which the Customs Court held to preclude the application of the doctrine of entireties to the imported merchandise.

■ We note that the "predictable relationship" referred to is only applicable to the *size* and not the shape of the frame to be assembled. The 45° mitered ends of the lengths of molding in each package make it readily apparent that only rectangular picture frames may be assembled. Thus, we are left with the question whether an unassembed 8″ × 10″ picture frame is a different article for classification purposes from an unassembled 10″ × 20″ picture frame. We think not. The imported merchandise is still basically picture frames.

We do not have here a question of whether the imported merchandise will go into picture frames or be used to decorate a piece of furniture so that we do not know *what* will be constructed; it is conceded that nothing but picture frames can result. Anyone skilled in using a small hammer could sit down at dockside and assemble picture frames as the imported merchandise is landed. We cannot perceive why it should not be classified as picture frames merely because the man with the small hammer could make frames in a great variety of *sizes.*

Appellee, citing Miniature Fashions, Inc. v. United States, 54 C.C.P.A. 11, C.A.D. 894 (1966), urges that to apply the doctrine of entireties to the instant imported merchandise would violate the well settled principle that the doctrine cannot be applied when such application would circumvent the intent of Congress. For demonstrating the intent of Congress to provide for the imported merchandise at bar under item 202.66, appellee relies upon the Tariff Classification Study, Schedule 2, Part 1, p. 23, wherein the Tariff Commission recommended:

SCHEDULE 2, PART 1—WOOD AND WOOD PRODUCTS

Explanatory Notes

Item 202.66 covers standard wood moldings, drilled or treated, and all other moldings, *including picture frame moldings,* whether or not drilled or treated. [Emphasis added.]

■ We do not find this argument persuasive. Picture frames are made *from* "picture frame moldings." "Picture frame molding" per se is not unassembled picture frame parts. It is raw material in the same sense that lumber is not furniture or parts thereof. It comes in varying lengths from which parts of picture frames must be fabricated by cutting to specific lengths which must also have 45° mitered ends. The imported merchandise at bar is *made from* the "picture frame moldings" referred to in the Tariff Classification Study and is *more than* mere molding. Accordingly, we do not perceive any Congressional intent to classify such merchandise as bulk molding. See Border Brokerage Co. v. United States, 63 Cust.Ct. 243, 244, C.D. 3903 (1969) (picture frame *molding* "in the white" (i. e., raw), cut up into 3 to 6 foot lengths and tied into bundles each containing 50 feet of molding, classifiable as standard wood moldings).

For the foregoing reasons, the decision of the Customs Court is reversed.