**UNITED STATES of America, Plaintiff,**

**v.**

**WATCHES, WATCH PARTS, CALCULATORS & MISC. PARTS, Defendant,**

**Golden Star Enterprise, Darrison Ltd., T.S.J.M. Electronics, Claimants.**

**No. 87–1814–Civ.**

United States District Court, S.D. Florida.

July 27, 1988.

**1318**

Karen Wherry, Asst. U.S. Atty., Miami, Fla., for U.S.

Leonard L. Rosenberg, Robert G. Schrader, Sandler Travis & Rosenberg, P.A., Miami, Fla., for claimants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ATKINS, District Judge.

This cause comes before the court on the parties' cross motions for summary judgment. After careful consideration of the motions, responses, and replies, and after a hearing, it is

ORDERED AND ADJUDGED that the plaintiff United States of America's motion is hereby GRANTED and the claimants' motion is DENIED.

From October of 1985, until March of 1986, United States Customs agents seized shipments containing thousands of counterfeit watches, watch parts, offset plates, and stamping dies. Offset plates are used to place a name or mark in ink on the face of a watch; stamping dies imprint the name or mark into the metal casing. The plates and stamping dies as well as the counterfeit watches and watch faces displayed the United States registered trademark names of "Casio," "Citizen," and "Swatch." The claimants, Darrison, Ltd., T.S.J.M. Electronics Co., Ltd., and Golden Star Enterprises are sellers of the seized merchandise.

On October 31, 1985, Customs agents seized a ninety two carton shipment from Hong Kong destined for Mercurio, S.R.I.

Stroessner, Paraguay.[1] The entry documents indicated that the merchandise contained within was "watch parts." After close inspection, agents discovered thousands of quartz watch movements in cases with straps but lacking faces or crystals ("watch bodies"), counterfeit watch faces bearing the name "Casio," several hundred "Swatch" watches, two "Casio," stamping dies, and four "Casio" offset plates. Thereafter, shipments arriving from Hong Kong destined for Mercurio, S.R.L. Stroessner, Paraguay were carefully scrutinized. On November 1, 1985, Customs observed yet another shipment of twenty two cartons arriving from Hong Kong with the same ultimate destination. The inventory listed the contents as "plastic straps," but the cartons actually held offset plates, stamping dies, 21,000 faceless wafer digital watches, and other similiar merchandise. The shipment was seized for falsifying documents and trafficking in counterfeit goods.

Between November of 1985, and March of 1986, Customs inspected and seized a total of thirteen shipments, seven of which originated with the three claimants represented in this action. Five of those shipments are the subject of this forfeiture action. The claimant Golden Star withdrew its claim to two of the shipments and other merchandise was released after payment of a penalty; the particular items released were not counterfeit or reproductions of protected merchandise. The claimants agreed to forfeit operational counterfeit watches with faces and crystals bearing the protected marks of "Casio," "Citizen," and "Swatch," as well as the stamping dies and offset plates, but seek return of the fully operational watch bodies that lack crystals or faces.

The government's complaint seeking forfeiture of the watch bodies alleges that the claimants violated Title 18 U.S.C. § 545[2] by

---

1. Imported merchandise destined for a foreign country may be entered and transported through the United States by posting a bond in an amount sufficient to cover the assessment of duties should the merchandise be lost or diverted prior to its ultimate departure. Such mer-

chandise is characterized as "in-bond" and may be entered by a bonded carrier without assessment or payment of duties.

2. Title 18 U.S.C. § 545 which reads in part: "Whoever fraudulently or knowingly imports or brings into the United States, any merchandise

importing merchandise that bears a protected mark, as defined by 15 U.S.C. § 1127 [3], in violation of 15 U.S.C. § 1124 and 19 U.S.C. § 1595a. Title 19 U.S.C. § 1526(e) provides for forfeiture of merchandise found violative of 15 U.S.C. § 1124.

The claimants' Motion for Summary Judgment and their Opposition to the government's Motion are based on two grounds. The claimants assert that the watch bodies are discrete products which, absent faces and crystals that bear the identifying or protected marks, do not violate the trademark laws. Alternatively, the claimants posit that, though this court finds the merchandise to be counterfeit, it was not "imported" into the United States for the purposes of applying the trademark laws nor was it "entered" at a customs house.

■ The government supports its contention that the faceless watch bodies are counterfeit merchandise by resort to the "doctrine of entireties," a judicially created rule of classification applied to determine whether goods are components dutiable separately or whether they are to be considered one entity for tariff purposes. The doctrine, which had its genesis in *Altman & Co. v. United States,* 13 Ct.Cust.Appls. 315, 318, T.D. 41232 (1925) states that:

> [I]f an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in sepa-

rate packages, and even though said parts might have a commercial value and be salable separately.

In cases in which imported parts were declared an entirety it was determined either that the combination of the parts resulted in a separate and distinct article, or that the imported article needed all of the parts to function as a whole. See *E.M. Stevens Corp. v. United States,* 49 Cust.Ct. 203, 204 (1962). *E.M. Stevens* makes it clear that the doctrine is equally applicable to parts that though contained in the same shipment are packaged separately. *See also Standard Brands Paints, Inc. v. United States,* 511 F.2d 564, 567 (C.C.P.A. 1975) ("the importer is selling, 'using,' and/or 'treating' the imported merchandise as unassembled picture frames, albeit one-half of each frame is sold in a separate package"). In *Standard Brands Paint,* the pieces were not intended to be assembled until they reached the consumer. In the present case, then, the watch parts, though packaged separately,[4] are essentially parts of a whole and not discrete products. The article needs all of the parts to function as a whole, a conclusion recognized and asserted unequivocally by the claimants. *See* Claimant's Reply to Government's Opposition to Motion for Summary Judgment and Claimant's Reply to Government's Cross Motion for Summary Judgment at 10 ("The watch bodies are not finished watches; they must be joined with the faces to make complete watches."); *see also id.* at 11 ("In the instant case, there is no question that the merchandise being sought was shipped in parts, i.e., that they needed to be assembled with other components to actually make a complete article.") The watch bod-

---

contrary to law ... knowing the same to have been imported or brought into the United States contrary to law—." Section 545 provides for the forfeiture of such merchandise in violation of this section. To take advantage of this statute, the government must establish a violation of another statute. *See Babb v. United States,* 218 F.2d 538 (5th Cir.1955); *United States v. One Lot Emerald Cut Stones and One Ring,* 461 F.2d 1189 (5th Cir.1972); *Huff v. United States,* 273 F.2d 56 (5th Cir.1959). In this case, the government has alleged violations of 15 U.S.C. § 1124 and 19 U.S.C. § 1595a.

3. Under 15 U.S.C. § 1127, "[t]he term 'trademark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

4. The watch bodies were packaged separately from the crystals and faces containing the registered trademarks though all of the parts were contained within the same shipment.

ies and the faces and crystals, though packaged separately, should be treated as one product.

Claimants argue strenuously that the doctrine of entireties is inapplicable to this case because it is purely a tariff classification tool that has no place in the context of "in bond" merchandise that is not subject to the imposition of a duty. The claimants support this contention by pointing out that the doctrine has never been employed as the government now urges it should be. This argument is particularly unpersuasive.

The doctrine of entireties was fashioned to resolve a particular import problem, calculation of proper tariffs. It is true that it has been used exclusively in classifying products to determine the proper duty owed. *See e.g., Computime, Inc. v. United States,* 772 F.2d 874 (C.A.Fed.1985); *Nichimen Co., Inc. v. United States,* 726 F.2d 1580 (C.A.Fed.1984); *Amico, Inc. v. United States,* 586 F.2d 217 (C.C.P.A.1978); *Stella D'Oro Biscuit Co., Inc. v. United States,* 570 F.2d 945 (C.C.P.A.1978); *Karoware, Inc. v. United States,* 564 F.2d 77 (C.C.P.A.1977); *New York Merchandise, Inc. v. United States,* 459 F.2d 1047 (C.C.P.A.1972); *United States v. Baldt Anchor, Chain & Forge Division of the Boston Metals Co., Albert Maurer Co.,* 459 F.2d 1403 (C.C.P.A.1972); *Tanross Supply Co. v. United States,* 433 F.2d 1332 (C.C.P.A. 1970); *C.R. Industries v. United States,* 8 I.T.R.D., 1183 (Ct.Int'l Trade 1986) [available on WESTLAW, 1986 WL 9273]. The fact that a span of sixty odd years has witnessed an expansion in the nature of import and tariff questions requires creation of new theories or adaptation of established theories to resolve them. The doctrine of entireties is particularly well suited to this instance because its primary aim is to identify and classify merchandise and therefore its function is not inexorably linked to the present tariff schedule. *Cf. Tanross Supply Co.,* 433 F.2d at 1335 n. 5 ("Although the doctrine of entireties is not applicable here, it is still very much alive, despite the passage of the new tariff schedules."). The efficacy of the doctrine is independent of the regulations imposed upon the product once it is identified and classified. Proper classification of merchandise when the doctrine was developed allowed proper application of tariffs. In this case, application of the doctrine to the defendant merchandise will aid in determining whether it is subject to section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526(e) which is at issue in this case. It thus retains its character as a tariff classification tool although no duties are ultimately imposed upon the subject merchandise. Therefore this court concludes that through application of the doctrine of entireties, the merchandise consisting of watch bodies and faces and crystals which bear protected trademarks shall be considered entireties and are thus counterfeit.

Under Title 18 U.S.C. § 545, "[w]hoever fraudulently or knowingly imports or brings into the United States any merchandise contrary to law" shall suffer forfeiture of the offending property. The government alleges that the claimants violated section 545 by importing the subject merchandise in violation of 15 U.S.C. § 1124. Merchandise in violation of this latter section is subject of forfeiture under 19 U.S.C. § 1526(e).

Title 15 U.S.C. § 1124 provides that "no article of imported merchandise which shall copy or simulate the name of the (sic) any domestic manufacture, or manufacturer, or trader ... or which shall copy or simulate a trademark registered in accordance with the provisions of this chapter or shall bear a name or mark calculated to induce the public that the article is manufactured in the United States, shall be admitted to entry at any customhouse of the United States...." Title 15 U.S.C. § 1127 defines "trademark" for purposes of that chapter; the parties do not dispute that the marks involved herein are registered trademarks.

■ The claimants urge two grounds to refute the government's reliance upon section 1124: (1) the articles were not "imported," and (2) there was no attempt to have the merchandise "entered" at any customhouse. Both of the claimants' arguments are based upon an overly narrow interpre-

tation of the terms "imported" and "entered" that this court finds unpersuasive.

The claimants cite *United States v. Cronkhite Co.*, 9 Ct.Cust.Appls. 129 (1919) in which the court states that "such merchandise [in-bond, in a bonded warehouse] would not be deemed by Congress to be 'imported' within the language of the act until it has passed beyond the custody and control of the customs officials and into the custody of the importer, his agent or consignee, thereby becoming a part of the body commerce of this country." *Id.* at 134. The claimants reply upon *Cronkhite* for the proposition that if an article is not subject to the imposition of a duty, it is not imported. Such a broad reading of that case, however, is not warranted.

The *Cronkhite* court was concerned with goods that were to ultimately enter the stream of commerce of the United States and thus were subject to the payment of tariffs. The issue before that court asked at what time the goods were "imported" for the purposes of applying either the old or the new tariff schedule. In the present case, the court is concerned with interpretation of the term "import" as it is used in a very different context, the Trademark Act of 1946, 15 U.S.C. § 1124. No precedent suggests that "import" as used in this very different context requires that same restrictive definition. In fact, courts, when considering the question of "importation" more recently, have stated: "[i]mported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country with intention of unlade, and the word 'importation' as used in tariff statutes, unless otherwise limited, means merchandise in which that condition has attached." *American Mail Line v. United States*, 6 Cust.Ct.R. 90, 93 (C.D. 435) (1941) (quoting *United States v. Estate of Boshell*, 14 Ct.Cust.Appls. 273, T.D. 41884). The *American Mail* court also noted that "[t]he fact that the merchandise in question was not intended to be sold or to be mingled with and become a part of the commerce of the United States is immaterial." 6 Cust.Ct.R. at 93–94 (citing *Agency Canadian Car & Foundry Co. v. United States*, 10 Ct.Cust.Appls. 172, T.D.

38547); *see also American Mail*, 6 Cust.Ct. R. at 94 ("Every commodity having value that is brought within the limits of the United States is imported merchandise within the meaning of the customs law.") (quoting *Moral & Co. v. United States*, T.D. 29260, G.A. 6805, 16 Tres.Dec. 167). In *Cunard Steamship Co. v. Mellon*, 262 U.S. 100, 122, 43 S.Ct. 504, 507, 67 L.Ed. 894 (1923), the Supreme Court considered the term "importation" as contained in the eighteenth amendment to the Constitution for purposes of the construction and application of the National Prohibition Act. The Court stated that "[i]mportation, in a like sense, consists in bringing an article into a country from the outside. If there be an actual bringing in, it is importation, regardless of the mode in which it is effected. Entry through a customhouse is not of the essence of the Act."

It is the considered opinion of this court, that the merchandise in question, though not intended to be introduced into the stream of commerce of the United States, was imported for purposes of application of the Trademark laws. The articles were brought into this country from the outside and, according to the customs Forms 7512 that accompany the claimants' motion, were actually unladed. This interpretation of the word "import" is consistent with the use of that word on the Customs Form 7512, in the CF 7512 Instructions for Transportation In–Bond, and in the tariff statutes as a whole. The customs regulations, then, contemplate that merchandise that is moving "in-bond" is unladed and imported despite the fact that duties are not assessed or paid.

The claimants dispute that the merchandise was "entered" or that any attempt was made to "enter" it at any customhouse of the United States. The claimants rely upon 19 C.F.R. § 141.0a(a) which states that: " 'Entry' means that documentation required by § 142.3 of this chapter to be filed with the appropriate Customs officer to secure the release of imported merchandise from the Customs custody, or the act of filing that documentation." 19 C.F.R. § 142.3 requires filing of either Cus-

toms Form 3461 or Customs Form 7533 to complete entry. The claimants stress that because the merchandise was moving in-bond, they were not required to file either CF 3461 or CF 7533 and therefore the merchandise was never "entered." This argument overlooks the purpose and scope of 19 C.F.R. Part 141 which the claimants cite in support of this position. 19 C.F.R. § 141.0 outlines the scope of Part 141 and expressly states that "[t]his part [Part 141] sets forth general requirements and procedures for the entry of imported merchandise, except entries under carnet, and *entries for transportation in bond or exportation....*" (emphasis added). Therefore the section that the claimants cite in support of their argument that the merchandise was never entered is not applicable. Section 141.0 states that "[u]nless the context requires otherwise or a different definition is prescribed, the following terms shall have the meanings indicated when used in connection with the entry of merchandise." "Merchandise in Transit Through the United States to Foreign Countries" is governed by 19 C.F.R. § 18.20 Entry Procedure which requires that "[w]hen an importation is entered for transportation and exportation ... four copies of Customs Form 7512" be filed. It is apparent that Part 18 does not contemplate either CF 7533 or CF 3461 for "entry" of in-bond merchandise which is considered "entered" nevertheless upon filing the CF 7512. This, then, is a situation in which "the context requires otherwise" than finding "entry" as defined by 19 C.F.R. § 141.0a. Therefore the fact that the claimants never filed the forms which Part 141 requires for "entry" did not preclude their merchandise from being "entered" under the appropriate section, 19 C.F.R. § 18.20, for in-bond merchandise.

This court concludes then that the use of the word "entry" in 15 U.S.C. § 1124 should not be limited to the definition in 19 C.F.R. § 141.0a, but rather given its much broader meaning encompassing every type of entry used throughout the customs regulations. The merchandise, though in-bond, was imported and admitted for entry for purposes of applying the Trademark Act of 1946, 15 U.S.C. § 1124. Because that merchandise was bearing a protected mark within the meaning of 15 U.S.C. § 1127 and it was in violation of section 1124, it is subject to forfeiture under 19 U.S.C. § 1526(e).[5]

Because the court has found the merchandise subject to forfeiture under the aforementioned sections, it will not consider the government's rather unique argument under 19 U.S.C. § 1595a.

It is the decision of this court that summary judgment be GRANTED to the plaintiff.

---

5. Title 19 U.S.C. § 1595a provides for the forfeiture of "every vessel, vehicle, animal, aircraft, or other thing used in, or to faciliate, by obtaining information or in any other way, the impor-

tation, bringing in, unlading, landing ... of any article which is being or has been introduced, or attempted to be introduced into the United States contrary to law...."